## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LEXOS MEDIA IP, LLC,**

      **Plaintiff,**

      **v.**

**OVERSTOCK.COM, INC.,**

      **Defendant.**

**Case No. 22-2324-JAR-ADM**

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Lexos Media IP, LLC ("Lexos") brings this patent infringement action against Defendant Overstock.com, Inc. ("Overstock"), alleging infringement of three patents involving technology that could be used to modify an Internet user's cursor to display content such as an image or other message to promote the online purchase and use of products and services. The parties dispute the proper construction of two terms from the Asserted Patents: "cursor display code" and "cursor display information." The Court has fully considered the parties' briefs, including their supplemental briefs, and the oral arguments presented at the November 20, 2023 hearing. The Court construes these terms as described more fully below.

## I.      Background

Lexos brings this patent infringement action against Overstock alleging infringement of three patents for technology that could be used to modify an Internet user's cursor to display content such as an image or other message to promote the online purchase and use of products and services. At a high level, Lexos alleges that Overstock's zoom feature infringes its patents. This feature allows a user to select a product image, which then generates a larger version of that image to the right of the original image that the user can navigate. A shaded, semi-transparent box is generated around the cursor.

The three patents are: U.S. Patent Nos. 5,995,102 ("the '102 Patent") and 6,118,449 ("the '449 Patent"), both of which are entitled "Server system and method for modifying a cursor image"; and U.S. Patent No. 7,975, 241 ("the '241 Patent"), entitled "System for replacing a cursor image in connection with displaying the contents of a web page."  Lexos alleges in the Amended Complaint that Overstock directly infringed Claim 72 of the '102 Patent; Claims 1, 38, and 53 of the '449 Patent; and Claim 35 of the '241 Patent (collectively, "the Asserted Patents") since at least 2016.

The application for the first patent—the '102 Patent—was filed on June 25, 1997.[1]  At that time, there were three main forms of online advertising: (1) banner ads, (2) frames, and (3) "self-appearing windows."[2]  Given the drawbacks to these three methods, the inventors sought to develop a way "to deliver advertising elements, i.e. logos, animations, sound, impressions, text, etc., without the annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored."[3]

The parties appear to agree that the three patents share the same inventors, figures, and specification, and are generally directed towards using a computer cursor as an advertising element.  According to the '102 Patent,

> [T]he present invention is directed to a system that provides online advertising content using the on-screen cursor which is generally controlled by an input of positioning device known as a 'mouse' or 'mouse pointer.'. . .
>
> . . .
>
> . . . The cursor or pointer may appear as a corporate or a brand logo which relates to advertising content within the web page being transmitted and displayed.  The cursor or pointer image may also

---

[1] '102 Patent, Doc. 73-1.  Pinpoint citations to the patents reference column and line numbering.

[2] *Id.* at 1:24–2:26.

[3] *Id.* at 2:27–32.

appear in a specified shape or color that is intended to convey a
message that relates to the advertising content within the web page
being transmitted and displayed.[4]

Claim 72 of the '102 Patent is representative of the claims at issue and includes both

disputed terms, set forth in bold:

> 72. A method for modifying an initial cursor image displayed on a
> display of a user terminal connected to at least one server,
> comprising:
> receiving a request at said at least one server to provide specified
> content information to said user terminal; providing said specified
> content information to said user terminal in response to said
> request, said specified content information including at least one
> **cursor display instruction** and at least one indication of cursor
> image data corresponding to a specific image; and transforming
> said initial cursor image displayed on said display of said user
> terminal into the shape and appearance of said specific image in
> response to said **cursor display instruction**, wherein said
> specified content information includes information that is to be
> displayed on said display of said user's terminal, wherein said
> specific image includes content corresponding to at least a portion
> of said information that is to be displayed on said display of said
> user's terminal, and wherein said **cursor display instruction**
> indicates a **cursor display code** operable to process said **cursor
> display instruction** to modify said cursor image to said cursor
> image in the shape and appearance of said specific image
> responsive to movement of said cursor image over a display of said
> at least a portion of said information to be displayed on said
> display of said user's terminal.[5]

The parties have complied with the deadlines in the Initial and Claim Construction Phase

Scheduling Order.[6]  This includes, *inter alia*, a Joint Claim Construction Statement under D.

---

[4] *Id.* at 3:22–26, 3:64–4:3.

[5] *Id.* at 24:10–36.

[6] Doc. 32 at 2.

Kan. Patent Rule 4.3,[7] Overstock's opening brief,[8] Lexos's response,[9] Overstock's reply,[10] and a Joint Final Claim Construction Chart.[11]  The parties also submitted supplemental briefs on November 13, 2023,[12] addressing two recent claim construction decisions issued in related cases in the Eastern District of Texas on the same patent claims.[13]

## II.    Legal Standards

A patent claim is "the portion of the patent document that defines the scope of the patentee's rights."[14]  "Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process,' which in turn necessitates a determination of 'what the words in the claim mean.'"[15]  The Supreme Court held in *Markman* that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court."[16]

In construing a term of art in a patent claim, the Court generally must give the words their ordinary meaning— "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."[17]  Sometimes, discerning the ordinary meaning of

---

[7] Doc. 70.

[8] Doc. 73.

[9] Doc. 75.

[10] Doc. 80.

[11] Doc. 92.

[12] Docs. 91, 93.

[13] *Lexos Media IP, LLC v. Amazon.com, Inc.*, Nos. 22-CV-00169, 22-CV-00175, 22-CV-00273, 2023 WL 5723642 (E.D. Tex. Sept. 5, 2023) [hereinafter "*Amazon*"]; *Lexos Media IP, LLC v. Nike, Inc.*, No. 22-cv-0311, slip. op. (E.D. Tex. Nov. 2, 2023) [hereinafter "*Nike*"].

[14] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

[15] *Id.* at 374 (quoting H. Schwartz, Patent Law and Practice 80 (2d ed. 1995)).

[16] *Id.* at 372.

[17] *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381–82 (Fed. Cir. 2021) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)).

claim language is "readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words," so courts may rely on "general purpose dictionaries."[18]  But often, the Court must examine terms "that have a particular meaning in a field of art."[19]  Since the meaning of such terms "is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean."[20]

The primary resource for claim construction is intrinsic evidence.[21]  Intrinsic evidence includes the words of the claims themselves, the specification, and the prosecution history.[22]  Extrinsic evidence is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."[23]  Extrinsic evidence is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'"[24]

## III.    Discussion

The parties filed a Joint Claim Construction Statement prior to briefing, in which they identified eight disputed terms to be briefed.[25]  The parties briefed their arguments on these eight

---

[18] *Phillips*, 415 F.3d at 1314.

[19] *Id.*

[20] *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

[21] *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

[22] *Phillips*, 415 F.3d at 1314.

[23] *Id.* at 1317 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)).

[24] *Id.* (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

[25] The parties previously agreed on constructions for the following claim terms: "cursor image data," "modified cursor image," "promotional material,"  "said specific image includes/including content corresponding to

disputed terms.  Then, after briefing concluded, judges in the Eastern District of Texas issued decisions in related cases filed by Lexos against different defendants, construing many of the same patent terms.  The parties filed supplemental briefs addressing these decisions, and state in their Final Claim Construction Chart that they have reached agreement on six of the eight previously-identified disputed terms:

- "cursor image" and "initial cursor image"

- "corresponding to" as used in the phrase "cursor image data corresponding to a/said specific image"

- "modifying"/"transforming" [said cursor image/initial cursor image] (including "modify [said cursor image]" and "modifying [a cursor image]")

- "specific image"

- "server"

- "tracks a movement of"

As to these terms, the parties agree that this Court should follow the constructions adopted by the Eastern District of Texas in *Amazon* and *Nike*.[26]

The parties, however, disagree about whether the Court should follow *Amazon* and *Nike* in construing the terms "cursor display code," and "cursor display information," which adopted the same constructions Lexos proposes here:

---

at least a portion of said information that is to be displayed on said display of said user's terminal," "specified content information," "content information," and "visual image."  *See* Doc. 70 at 2–3.

[26] Doc. 92-1.

| Disputed Claim Term | Plaintiff's Proposed Claim Construction | Defendant's Proposed Claim Construction |
|---|---|---|
| **"cursor display code"**<br><br>See '102 Patent, Claim 72; '449 Patent, Claims 1, 38, and 53. | "computer code for modifying the display of the cursor image" | Plain and Ordinary Meaning.<br><br>*In the alternative*, the plain meaning should be construed as "code that, in response to receiving cursor display instruction, interfaces with the operating system to cause it to modify the cursor image" |
| **"cursor display instruction"**<br><br>See '102 Patent, Claim 72; '449 Patent, Claims 1, 38, and 53; '241 Patent, Claim 35. | "an instruction operable to modify the display of a cursor image" | Plain and Ordinary Meaning.<br><br>*In the alternative*, the plain meaning should be construed as "parameters or other data used by the cursor display code to modify the cursor image" |

Lexos relies on the claim language and specification, as well as the *Amazon* and *Nike* orders, to support its proposed constructions of the disputed terms. Although Lexos acknowledges that the '102 and '449 Patents use both of these terms in the claim language and specifications, it argues that the distinction between them should not be exaggerated. Overstock argues that Lexos's proposed constructions broaden the scope of the invention by erasing any distinction between "cursor display code" and "cursor display instruction." Like Lexos, Overstock argues that the claim language and specification support its proposed alternative constructions, which purport to create clear distinctions between the two terms. Overstock contends that the terms refer to different functions—a "cursor display instruction" instructs the "cursor display code" how to modify the operating system's cursor. Overstock further contends that the defendants in *Amazon* and *Nike* did not advance the same arguments as Overstock does here; therefore, the Court should not rely on them.

### A.     Related Cases

The Court begins its analysis by examining how the *Amazon* court construed these terms,[27] and whether and to what extent this Court is bound by the *Amazon* constructions.  As for the first term, the court explained in *Amazon* that "Lexos characterized its concern as clarifying that 'cursor display code' is not code for *displaying* the *cursor*, but rather code for *modifying* the display of the cursor *image*."[28]  The defendants did not object to that characterization at the *Amazon* hearing, and the court found that "[d]espite the fact that Lexos's proposed construction is already accounted for elsewhere in the surrounding claim language, the Court sees some benefit and no harm in articulating the cursor display code's purpose separately."[29]  It therefore construed the term as proposed by Lexos: "computer code for modifying the display of the cursor image."[30]  Similarly, with respect to "cursor display information," the court adopted most of Lexos's proposed construction, removing certain language to which the defendants objected that is not at issue here.[31]  The court therefore construed "cursor display instruction" as "an instruction operable to modify the display of a cursor image."[32]

The Federal Circuit has explained that "[r]elated judicial holdings can be an appropriate form of non-binding extrinsic evidence in a claim construction analysis."[33]  But that court has

---

[27] The *Nike* court followed these *Amazon* constructions, noting that the parties raised the same arguments in that case.  *Nike*, No. 22-cv-0311, slip. op. at 8 (E.D. Tex. Nov. 2, 2023).  Therefore, the Court need not separately consider *Nike*.

[28] *Amazon*, Nos. 22-CV-00169, 22-CV-00175, 22-CV-00273, 2023 WL 5723642, at *4 (E.D. Tex. Sept. 5, 2023).

[29] *Id.*

[30] *Id.*

[31] The court omitted the following language at the end of Lexos's proposed construction: "in conjunction with other information."  *Id.* at *4–5.

[32] *Id.* at *5.

[33] *MEMS Tech. Berhad v. Int'l Trade Comm'n*, 447 F. App'x 142, 153 (Fed. Cir. 2011) (citing *V–Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005)).

provided limited guidance on the preclusive effect of *Markman* decisions in related cases concerning the same patent.[34]  District courts are split on the issue.  "[S]ome district courts have held that prior *Markman* rulings were 'sufficiently "final" to merit application of collateral estoppel—even though the matter to which they were necessary was never reduced to a final judgment after verdict,'" while "others . . . have reached the opposite conclusion on similar facts."[35]

Other courts strike a middle ground.  For example, in the Eastern District of Texas, prior orders in related cases on the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*."[36]  Other district courts decline to apply collateral estoppel but give prior *Markman* rulings "deferential treatment unless clearly erroneous."[37]

Lexos argues that this Court should defer to the *Amazon* and *Nike* courts' construction of "cursor display code" and "cursor display instruction," by applying the approach used in the Eastern District of Texas.  Overstock contends that the Court should not defer to those constructions because the defendants in *Amazon* and *Nike* did not present the same arguments it raises here—that Lexos's proposed terms violate the presumption that different patent terms have

---

[34] *See RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1260–62 (Fed. Cir. 2003) (finding no issue preclusion under regional circuit law because neither claim construction nor partial summary judgment order were "final" and prior case settled after those decisions were issued, so there was no judgment on the merits).

[35] *DE Techs., Inc. v. IShopUSA, Inc.*, 826 F. Supp. 2d 937, 941 (W.D. Va. 2011) (quoting *TM Pats., L.P. v. IBM*, 72 F. Supp. 2d 370, 377 (S.D.N.Y. 1999)) (collecting cases).

[36] *Barkan Wireless IP Holdings, LP v. T-Mobile US, Inc.*, No. 21-cv-34, 2021 WL 4399514, at *3 (E.D. Tex. Sept. 26, 2021) (quoting *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 04-cv-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006)) (citations omitted).

[37] *DE Techs., Inc.*, 826 F. Supp. 2d at 941 (quoting *Parker-Hannifin Corp. v. Baldwin Filters, Inc.*, 724 F. Supp. 2d 810, 816  (N.D. Ohio 2010)) (citations omitted); *Parker-Hannifin Corp.*, 724 F. Supp. 2d at 815–16.

different meanings[38]—nor did they propose the alternative constructions Overstock proposes here.

The Court finds that although *Amazon* is instructive and provides important context for this Court's construction of the two remaining disputed terms, it is neither binding nor preclusive.  Moreover, the law utilized in the Eastern District of Texas is not binding on this Court.  And, as that court acknowledges, "prior orders in related cases do not bar the Court from conducting additional construction in order to refine earlier claim constructions."[39]  Because Overstock presents arguments in this case that were not before the courts in *Amazon* and *Nike*, the Court will consider those arguments in the first instance and determine whether the intrinsic evidence supports them.

**B.      Analysis of Disputed Terms**

Both parties argue that the claim language supports their proposed constructions of "cursor display code" and "cursor display instruction."  Lexos points the Court to language in Claim 1 of the '449 Patent, which states that the system comprises, *inter alia*, "cursor display code, said cursor display code operable to modify said cursor image."[40]  Both parties point the Court to language in Claim 1 of the '449 Patent and Claim 72 of the '102 Patent providing that "said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image."[41] According to Lexos, a person with ordinary skill can read and interpret this language without

---

[38] *See, e.g.*, *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

[39] *Barkan Wireless IP Holdings, L.P.*, 2021 WL 4399514, at *3 (alteration omitted) (quoting *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014)).

[40] '449 Patent, Doc. 73-2, at 18:45–47

[41] '449 Patent at 18:64–67; '102 Patent at 24:57–60.

further construction.  Indeed, both counsel at the hearing appeared to agree that, according to the claim language, the cursor display instruction instructs the cursor display code, if necessary, which then tells the user's computer what to do with the cursor display.

Overstock argues that even though Lexos's proposed constructions mirror the claim language, they remove any distinction between the two terms since they state that they are both used to modify the display of a cursor image.  Overstock cites the rule that different claim terms are presumed to have different meanings.[42]  It argues that if "code" and "instruction" become synonymous, Lexos is able to point to different parts of the same website to satisfy both limitations, which means it can forgo identifying the code that is installed on the user's machine.

The Court disagrees with Overstock that Lexos's proposed constructions erase any distinction between the two terms.  Overstock contends that the constructions make the terms synonymous because they both "become anything 'operable to modify the display of a cursor image.'"[43]  But there are different words at the beginning of Lexos's proposed constructions that distinguish them.  "Cursor display code" is not "anything operable to modify the display of a cursor image," it is "*computer code* for modifying the display of a cursor image."  Likewise, "cursor display instruction," is not "anything operable to modify the display of a cursor image," it is "*an instruction* operable to modify the display of a cursor image."

While Lexos's proposed constructions add no meaning to the words "code" and "instruction" as used in the patent claims, they are clearly not synonymous.  Both terms are used in the claim language and therefore they are presumed to carry different meanings under

---

[42] *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

[43] Doc. 91 at 8.

established principles.[44]  In fact, the claim language uses them together and makes clear that they work together to modify the cursor image.  Although Lexos argues that Overstock exaggerates the distinction between these terms, it does not dispute that they are both used in the patent and therefore have different meanings.[45]  As the *Amazon* court noted, Lexos's proposed constructions instead aim to clarify the purpose of the words rather than add meaning to them, as their proposals were otherwise "accounted for elsewhere in the surrounding claim language."[46]  Nonetheless, the Court agrees with the *Amazon* decision that these constructions offer some benefit in making the purpose clear, and do little harm.[47]

Overstock proposes alternative constructions aimed at drawing clearer distinctions between the two terms than Lexos's proposed constructions provide.  But the Court finds that neither the claim nor specification language supports its proposed alternative constructions.  For example, it proposes that "cursor display code," be construed as "code that, in response to receiving cursor display instruction, interfaces with the operating system to cause it to modify the cursor image."  But the intrinsic evidence does not include the language "in response to," or "interfaces with the operating system," nor does Overstock offer any other support for this particular definition.  Similarly, the intrinsic evidence does not support Overstock's proposed

---

[44] *See, e.g.*, *CAE Screenplates Inc.*, 224 F.3d at 1317; *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).

[45] Despite conceding that the two terms have different meanings, Lexos's counsel stated at oral argument that "technical people who are knowledgeable in this area" have told him there is not a "bright line distinction" between the two terms.  The Court disregards this conclusory assertion as Lexos has offered no evidence to support it.  Nor is there any indication that these sources qualify as persons with ordinary skill in the art.  As stated repeatedly throughout this opinion, a presumption applies here that different claim terms have different meanings, and there is no basis in the claim language for rebutting that presumption here.  Counsel acknowledged as much at the hearing.

[46] *Amazon*, Nos. 22-CV-00169, 22-CV-00175, 22-CV-00273, 2023 WL 5723642, at *4 (E.D. Tex. Sept. 5, 2023).

[47] *See id.*

construction of "cursor display instruction" as "parameters or other data used by the cursor display code to modify the cursor image."

Overstock's constructions primarily rely on Figures 2 and 3 of the Asserted Patents, and the descriptions thereof.  Overstock embarks on a multi-step explanation derived from these figures to support its proposed constructions.  But these figures are presented as embodiments in the patents.[48]  The Federal Circuit has instructed that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."[49]

Overstock fails to present clear evidence from the intrinsic record that Lexos intended the embodiments represented by Figures 2 and 3 to be "strictly coextensive" with the claims.[50] Instead, the claim language itself makes clear that "said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image."[51]  This is consistent with the examples provided in the specification, but the Court declines to further limit the constructions according to the embodiments provided in the specification.[52]

---

[48] *See* '102 Patent at 7:16–19 ("FIG. 2 . . . is representative of a client-server network system connected via the Internet according to one embodiment of the present invention."), 9:66–10:1 ("One embodiment of this method in accordance with the present invention is set forth in greater detail in the flowchart illustrated in FIG. 3.").

[49] *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) (citations omitted); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1323–24 (Fed. Cir. 2005) (en banc) (discussing "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim").

[50] *See Phillips*, 415 F.3d at 1323.

[51] '449 Patent at 18:64–67; '102 Patent at 24:57–60.

[52] Because the Court finds that the intrinsic evidence does not support Overstock's proposed alternative constructions, it need not consider the extrinsic evidence it relies on—a portion of Lexos's oral argument in another related case in 2017 where counsel stated that the Asserted Patents overcame certain prior art defenses because the cursor display instruction and cursor display code come from "outside the web server provider" that worked together

The Court therefore adopts Lexos's proposed constructions, consistent with the decisions in *Amazon* and *Nike*.  The Court will add the further caveat in this case that the two disputed terms are not synonymous.  The only impact of this Court's decision to adopt Lexos's proposed constructions is to clarify that both terms are used to modify the display of the cursor image, and that they have different meanings.  These constructions do not further define "computer code," "code," or instruction," as these terms have not been submitted to the Court as disputed terms that require construction and the Court declines to further define them without input from the parties.

**IT IS THEREFORE ORDERED BY THE COURT** that the Court adopts the following constructions of the remaining two disputed terms in this matter:

- "cursor display code"—computer code for modifying the display of the cursor image

- "cursor display instruction"—an instruction operable to modify the display of a cursor image

*These terms are not synonymous.*

**IT IS SO ORDERED.**

Dated: December 4, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

in a particular way to tell the operating system to modify the cursor display.  The prior art, in contrast, only changed the image of the cursor due to something internal to the user's computer.  *See* Doc. 73-9 at 28:13–29:1.