# EXHIBIT 3

*RESTRICTED – ATTORNEYS' EYES ONLY*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEXOS MEDIA IP, LLC,

     *Plaintiff,*

v.                                                           Civil Action No. 2:22-cv-02324

OVERSTOCK.COM, INC.,

     *Defendant.*

## EXPERT REPORT OF DR. SAMUEL H. RUSS, PH.D.

## CONCERNING INFRINGEMENT BY OVERSTOCK.COM, INC.

*RESTRICTED – ATTORNEYS' EYES ONLY*

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND AND EXPERIENCE ......................................................................... 2

III.    SUMMARY OF OPINIONS ......................................................................................... 6

IV.     LEGAL PRINCIPLES ................................................................................................. 11

        Infringement -- a Two Step Process ........................................................................... 11

        Literal Infringement ................................................................................................... 11

        Independent and Dependent Claims ........................................................................... 12

        Direct Infringement .................................................................................................... 12

        Method Claims ............................................................................................................ 13

        System Claims ............................................................................................................. 13

V.      CLAIM CONSTRUCTON .......................................................................................... 13

VI.     THE PATENTS-IN SUIT ............................................................................................ 17

A.      '102 Patent .................................................................................................................. 17

B.      '449 Patent .................................................................................................................. 17

C.      '241 Patent .................................................................................................................. 18

D.      Definition of the "Person of Ordinary Skill in the Art" ........................................... 18

E.      Brief Overview of the Common Specification ........................................................... 19

        Representative Asserted Claims ................................................................................. 24

VII.    BENEFITS OF THE PATENTS .................................................................................. 26

VIII.   ACCUSED INSTRUMENTALITIES ........................................................................ 28

B.      System Comprising the Overstock.com Website and Client Computers ................... 28

C.      Overview of the Accused Overstock dynamic zoom Technology (1st Iteration - Early 2015

*RESTRICTED – ATTORNEYS' EYES ONLY*

to October 2017) ................................................................................................ 29

D.    Overview of the Accused Overstock Hover Zoom Technology for the Second Iteration
      (Early 2015 to October 27, 2017) ...................................................................... 36

E.    Overview of the Accused Overstock Hover Zoom Technology (Third Iteration – after
      October 27, 2017) ............................................................................................... 40

IX.   INFRINGEMENT OF THE ASSERTED CLAIMS ........................................ 45

ii.   '449 Patent ........................................................................................................ 48

iii.  '241 Patent ........................................................................................................ 49

B.    OVERSTOCK'S INFRINGEMENT OF THE ASSERTED CLAIMS ........................... 50

(2015 to 2017) ............................................................................................................. 50

ii.   '449 Patent ........................................................................................................ 53

iii.  '241 Patent ........................................................................................................ 53

X.    CONCLUSIONS ................................................................................................ 54

patents related to client devices, television, multimedia systems, and interactive programming. Additionally, I have been a joint inventor on 9 issued European patents, also related to client devices, multimedia, and storage devices.

23.     Therefore, based on my education, professional experience of 35 years, and my writing of scholarly books and publications, I am an expert in the relevant field of the '102 patent and have been an expert in this field since well before June 25, 1997, which I understand is the claimed priority date of the patents-in-suit. I am intimately familiar with how a person having ordinary skill in the art would have understood and used the terminology disclosed in the common specification of the patents-in-suit as of that date.

24.     In performing my analysis, I have relied upon the materials listed in Exhibit 2 hereto.

### III.    SUMMARY OF OPINIONS

25.     My opinions are set forth in the body of this Report and in the Exhibits that I have prepared and attached to this Report. These Exhibits are part of my Report, and are incorporated herein in their entirety. Without intending to limit in any way the opinions expressed in this Report, following is a summary of my opinions.

26.     The Asserted Claims have been infringed by Defendant's use of the methods for modifying a cursor image displayed on a display of a user terminal on the Overstock product-level webpages of its website. In particular, Overstock used a feature on its product detail webpages that I will refer to as "hover zoom" since well prior to 2016, perhaps as early as 2012-2013. While Overstock has used various variants of this feature, each of these variants has infringed one or more of the Asserted Claims resulting in damages during the period for which damages are available for each of the Asserted Patents.

RESTRICTED – ATTORNEYS' EYES ONLY

27.     The hover zoom functionality provided a valuable tool for online retailers, such as Overstock, because this features allows the viewer of an Overstock product detail webpage to dynamically inspect a picture of the product using a modified cursor.  More particularly, when a user moves their default cursor over a main product image (which Overstock I understand refers to as a "hero image"), the cursor is modified to include the appearance of a  (1) a zoom lens the user can move over any portion of the hero image to visually highlight a portion of the product image and (2) a higher resolution zoom image that moves to track the zoom lens so that it always matches the portion of the main product image visually highlighted by the zoom lens.

28.     An example of the accused functionality on an exemplary Overstock product-level webpage is shown in Fig. 1 below, showing the webpage prior to the cursor modification:

## Fig. 1
## Overstock Product-Level Webpage
## (Pre-Cursor Modification)



29.     As seen in Figure, when a user retrieves a product detail webpage (*i.e.*, the product page for an individual product) for a given Overstock product, the webpage shows a main product image (referred to as the "hero" image) on the left side of the webpage. Various thumbnail images

RESTRICTED – ATTORNEYS' EYES ONLY

also appear below the hero-image which the user can individually select to make it the hero image. The right side of the webpage shows various details of the product.[1]

30.        An example of the accused functionality on an exemplary Overstock product-level webpage is shown in Fig. 2 below, showing the webpage after the cursor modification:



Fig. 2
Overstock Product-Level Webpage
(Pre-Cursor Modification)

Figure 2a (First Position)

Figure 2b (Second Position)

---

[1] I understand the webpage and all the code/instructions and information that the user's browser needs to display the Overstock product details webpage on the user's computer originate from Overstock's servers.

RESTRICTED – ATTORNEYS' EYES ONLY

31.     The cursor modification is triggered by the user scrolling (*i.e.* moving or, in the parlance of Windows, "mouse over")  their cursor over the main product image, whereby the accused hover zoom functionality changes the initial cursor image to a specified image, for example the white arrow above. In connection with the cursor modification, the hover zoom functionality also displays a semi-transparent box ("zoom lens") surrounding the white arrow and ties it to the cursor's position so that it moves concurrently with the movement of the cursor.  The semi-transparent box highlights a portion of the main product image within its four corners. Also, on the right side of the webpage, the hover zoom functionality displays a higher resolution and enlarged version ("zoom image") of the portion of the main product image highlighted by the zoom lens. The accused hover zoom functionality also ties the zoom image to the cursor position so that as the user moves the zoom lens over any portion of the hero image, the displayed zoom image also moves within its frame to track the movement of the zoom lens. This allows a user to move their cursor around the product image to highlight various portions of the product image with the zoom lens and move the portion of the zoom image displayed within its frame to see that same portion of the product image in high resolution, zoomed form. The modified cursor thus includes the white arrow, the semi-transparent box, and the zoomed image.

32.     As can be seen in Figures 1 and 2 above, the modified cursor allows a user to move the "zoom lens" so that the user can specify which portion of the hero image is displayed to the user in zoomed form. Specifically, Figure 2a shows a user hovering over the top-left portion of the hero image, allowing a user to evaluate that portion of the hero image in zoomed form. When a user moves its cursor to the bottom-right portion of the hero image, such as in Figure 2b, the zoom image displayed in the zoom frame moves, in real time, to match the new cursor position. The

RESTRICTED  – ATTORNEYS' EYES ONLY

product or method includes each element or step of the claim, then the product or method infringes the claim even if such product or method contains additional elements or steps that are not recited in the claim.

### Method Claims

41.          To infringe a method claim, all steps of the method must be performed in the United States by, or attributable to, a single entity. Where more than one actor is involved in practicing the method steps, I understand that an actor will be responsible for the steps performed by others if that actor directs or controls others' performance or if the actors are engaged in a joint enterprise.

### System Claims

42.          An infringing use of a claimed system occurs where the system as a whole is put into service, *i.e.*, the place where control of the system is exercised and beneficial use of the system obtained. Infringement of "system comprising" claims can occur where components of the claimed system were in the possession of more than one actor. To use a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it.

43.          I understand that a person may directly infringe even if they believe in good faith they are not infringing.  They may directly infringe even if they did not know of the patent or the infringement. Infringement does not require proof that the person copied a product or method.

## V.     CLAIM CONSTRUCTON

44.          In rendering my opinion, I have applied the constructions of claim terms agreed to by the parties, including constructions that the parties ultimately agreed to as controlling in this case that were issued by the Eastern District of Texas in patent litigation brought by Lexos Media against Amazon and Nike involving the patents-in-suit. For each other claim term, I have applied the plain and ordinary meaning of the term as would be understood by a person of ordinary skill in

RESTRICTED – ATTORNEYS' EYES ONLY

the art ("POSITA") at the time of the claimed invention, where appropriate, in light of the intrinsic

evidence. The agreed claim constructions I have applied are as follows:

| Claim Term | Agreed Construction Plaintiff's Proposed | Defendants' Proposed Claim Construction | Court's Construction |
|---|---|---|---|
| **"corresponding to"** as used in the phrase "cursor image data corresponding to a/said specific image"<br><br>'102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53. | **[AGREED]** | **[AGREED]** | Plain and ordinary meaning. No construction required. |
| **"cursor image data"**<br><br>'102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, and 53. | **[AGREED]** | **[AGREED]** | Plain and ordinary meaning. |
| "**visual image**"<br>'241 Patent, Claim 35. | **[AGREED]** | **[AGREED]** | Plain and ordinary meaning. |
| **"server" (computer or system)**<br><br>'102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, and 53;<br>'241 Patent, Claim 35. | **[AGREED]** | **[AGREED]** | Plain and ordinary meaning. No construction |
| **"said specific image includes/including content corresponding to at least a portion of said information that is to be displayed on said** | **[AGREED]** | **[AGREED]** | "an image representative of at least a portion of the subject or topic displayed on the screen" |

*RESTRICTED – ATTORNEYS' EYES ONLY*

| | | | |
|---|---|---|---|
| display of said user's **terminal**"<br><br>'102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53. | | | *Lexos Media IP, LLC v. AP- MEX, Inc.,* No. 216CV00747JRGRSP, 2017 WL 1021366, at *5–6 (E.D. Tex. Mar. 16, 2017). |
| "**specified content information**"<br><br>'102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 38 and 53.<br><br>"**content information**"<br><br>'241 Patent, Claim 35. | **[AGREED]** | **[AGREED]** | The term "specified content / "content information" means "information terminal for use in the display, such as a web page." |

45.     The Court's claim constructions stipulated to by the parties that I applied are as

follows:

| Claim Term | The Court's Construction |
|---|---|
| "cursor display code"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53) | "computer code for modifying the display of the cursor image" |
| "cursor display instruction"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53;<br>'241 Patent, Claim 35) | "an instruction operable to modify the display of a cursor image" |
| "cursor image," "initial cursor image," "modified cursor image"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53;<br>'241 Patent, Claim 35) | "a movable image on a display screen whose position can be controlled through a user interface" |

*RESTRICTED – ATTORNEYS' EYES ONLY*

| | |
|---|---|
| "modifying" / "transforming" [said cursor image/initial cursor image] (including "modify [said cursor image]" and "modifying [a cursor image]") ('102 Patent, Claim 72; '449 Patent, Claim 27, 53; '241 Patent, Claim 35) | Plain and ordinary meaning. |
| "specific image" ('102 Patent, Claim 72; '449 Patent, Claims 1, 27, 53) | Plain and ordinary meaning. |
| "tracks a movement" ('241 Patent, Claim 35) | Plain and ordinary meaning. |
| "promotional material" ('241 Patent, Claim 35) | Plain and ordinary meaning. |

*RESTRICTED – ATTORNEYS' EYES ONLY*

zoomed form. Thus, the portion of the product image bounded by the clear box and the zoomed image directly correspond, by design.

- As a user moves the clear box over the main product image and the "highlighted" portion of the product image beneath the clear box changes, the zoomed image is dynamically updated accordingly so that it continues to directly correspond to the highlighted portion of the main product image.

- Thus, the specific image of the modified cursor image allows the user to see (and thereby better control) exactly which part of the main product image will be shown in zoomed form. The accused dynamic zoom feature thus provides a way for the customer to "inspect" the product to thereby emulate inspecting a physical product in a brick-and-mortar store---a feature that was very critical in the early days of ecommerce (the time of the invention) in making the customer feel comfortable with on-line purchasing instead of going to a physical store.

## IX.    INFRINGEMENT OF THE ASSERTED CLAIMS

### A.    OVERSTOCK'S INFRINGEMENT OF THE ASSERTED CLAIMS

#### i.    '102 Patent

116.        Plaintiff asserts claim 72 of the '102 Patent, which is a method claim reciting the performance of certain steps, some of which are performed by Overstock servers and some of which are performed by client devices executing code furnished by the Overstock server which control the client devices with regard to the claimed steps. Every claim limitation is evaluated within Exhibit 5 and adopted herein, regardless of whether the limitation is addressed separately herein *See* Ex. 5.

117.        Overstock, in general, modifies a cursor when the cursor is moved over an image of a product. *See*, Ex. 5. The initial cursor is modified into a cursor image in the shape and appearance of a specific image that comprises (1) a clear box; (2) with a pointing-hand cursor

image in the layer above the clear box; (3) a portion of the image of the product in the layer beneath it that is highlighted by the clear box that is the subject of the displayed web page; and (4) a zoom image that corresponds to the highlighted portion of the product image. *Id.*

118.      Overstock, since at least 2017 or later, provided web pages to individuals for use on the *Overstock.com* website that operate to modify the appearance of those pages relating to the display of cursors ("Overstock Accused Instrumentality"). *See*, Ex. 5.

119.      The method performed by Overstock via the Overstock Accused Instrumentality has included the step of Overstock receiving a request to provide a web page to a user terminal. *See*, Ex. 5.

120.      The method performed by Overstock via the Overstock Accused Instrumentality has included the step of Overstock transmitting and providing a web page to a user terminal in response to the request for a web page. *See* Ex. 5.

121.      The web page provided by Overstock via the Accused Instrumentality has included one or more instructions to modify an initial cursor image and contains data corresponding to a specific image displayed, or to be displayed, on a user's terminal that is a modification of an initial cursor image. *See* Ex. 5.

122.      The method performed by Overstock via the Accused Instrumentality has included the step of Overstock providing instructions and code that has controlled and transformed the initial cursor image displayed on the display of the user's terminal into a specific image with a particular shape an appearance in response to Overstock's instructions. *See* Ex. 5.

123.      The transformed specific image resulting from Overstock's infringing process has included content corresponding to at least a portion of the information that is to be displayed on the display of the user's terminal. *See* Ex. 5, and below.

*RESTRICTED – ATTORNEYS' EYES ONLY*

124.        Overstock's instructions contain code provided and controlled by Overstock that is operable to process the instructions to modify the initial cursor image to the image in the shape and appearance of the specific image responsive to movement of the cursor image over a display of at least a portion of the information to be displayed on the display of the user's terminal. The cursor modification resulting from Overstock's accused Hover Zoom feature results in two specific images being displayed in the Overstock product-detail page when the user moves the cursor position over the main product image: (1) the portion of main product image highlighted by the zoom lens and (2) the corresponding zoom image. Both images match each other and correspond to the subject of the images and text on the webpage, namely the product being sold on that webpage.

125.        I have reviewed the Eastern District of Texas's order in the Amazon case in which that court held that the specific image created by the zoom lens did not move because the underlying product image itself was static. I disagree with the court's reasoning and believe that it, as a technical matter, misapprehends how images and movement are created on a display screen. First, "movement" on a display screen is a user perception that is created based upon the set of pixels that are activated or changed during the time period of the apparent movement. For example, movement of an object towards the left side of the display screen would involve progressively changing where the set of pixels comprising the visual appearance of the object are displayed, with each successive set of pixels reflecting the objecting being displayed progressively to the left. Second, the specific image created at the zoom lens in the Amazon case was not created simply from the underlying product image but in fact was a combined image that included pixels comprising a portion of the underlying product image with the pixels comprising the semi-transparent box. Just as with any other movement depicted on a display, when the user moved the

RESTRICTED – ATTORNEYS' EYES ONLY

semi-transparent box to a different location over the main product image, the location and content of the set of pixels comprising the highlighted portion of the product image changed (*i.e.*, the highlighted portion moved from one position to another) giving the appearance of the movement of the specific image. In other words, a user views the combined image created by the zoom lens and underlying product image and, from the user's perspective, that combined image as seen by the user does move in response to movement of the zoom lens via mouse activities. In any event, I understand is undisputed that the zoom image that is displayed as part of the cursor modification moves, as Overstock's corporate representative Aaron Bangerter confirmed.

126.    To the extent that any required steps of the claim occurred on a device in the possession, custody or control of and used by a third party, Overstock performed those steps because it initiated and controlled the performance of those steps. Overstock, through the Overstock website, has used Overstock's Accused Instrumentality for purposes of infringement and has put Overstock's Accused Instrumentality into service. In particular, Overstock has controlled each element of Overstock's Accused Instrumentality and the Instrumentality as a whole and has obtained a benefit from doing so in the form of improved marketing of products and services sold by Overstock through its website. Overstock has provided and controlled any functionality required by Overstock's Accused Instrumentality that has taken place on the user/customer's computer.

127.    Overstock is a direct infringer of claim 72 of the '102 Patent, as demonstrated in the claim chart which is attached as Exhibit 5 to this report, because Overstock performs or causes to be performed, all the steps of claim 72.

### ii.  '449 Patent

128.    Plaintiff asserts claims 1, 38, and 53 of the '449 Patent. Claim 38 depends from unasserted claim 27. Claims 1, 27, and 38 are system claims drawn to a server system for modifying a cursor images. Overstock infringes claims 1 and 38 by making and using the

*RESTRICTED – ATTORNEYS' EYES ONLY*

Executed December 31, 2024 at Mobile, Alabama.

Samuel H. Russ, Ph.D.

# Lexos Media IP, LLC v. Overstock.com, Inc.

# EXHIBIT 5-CHART for Hover Zoom Iterations 1/2 Dr. Russ Infringement Report

Lexos Media v. Overstock.com, Inc.

# U.S. Patent No. 5,995,102[1]

---

[1] I understand Overstock asserts that iterations 1 and 2 were used during the relevant period. *See* Overstock Response to Interrogatory 18.

Lexos Media v. Overstock.com, Inc.

| `102 Patent Claim 72 | Accused Website Infringement Contention |
|---|---|
| 72[preamble]<br><br>A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising: | Overstock.com, Inc. ("Overstock"), through its website www.overstock.com (the "Overstock Website"), during the Relevant '102 Time Period (as defined in the main body of this report), has performed a method for modifying an initial cursor image displayed on a display of a remote user's terminal that is connected to at least one Overstock server via a network (e.g., the Internet) and providing the remote user's terminal with information, instructions, and code for modifying an initial cursor image, as shown in the examples set forth below. The method is incorporated into the technology referred to herein as dynamic zoom. As detailed below, this technology displays a main product image modifies an initial cursor image into the shape and appearance of a specific image when a customer moves their cursor over the main product image. The cursor modification features various visual elements: a cursor, a semi-transparent box and the portion of the main product image beneath the semi-transparent box, which appears in "highlighted" form. The same portion of the main product image is also displayed in zoomed form and is also tied to the cursor position so that when a user moves the zoom lens to highlight various portions of the main product image, the zoomed image is moved and updated accordingly so that it tracks the movement of the zoom lens whereby the zoomed image continues to match the highlighted portion of the main product image beneath the semi-transparent box. In this manner, the zoom lens indicates to the customer what portion of the main product image they will see in zoomed form thereby helping the customer visually inspect the depicted product.<br><br>For example, Overstock has performed a method for modifying an initial cursor image displayed on the display of a remote user's terminal, as shown in **Exhibits 5-1** and **5-2**. |

Lexos Media v. Overstock.com, Inc.

Overstock Product-Level Webpage
(Pre-Cursor Modification)
Iteration 1/2



**Exhibit 5-1**

**Exhibit 5-1** is a webpage captured by the Internet Archive Wayback Machine on June 16, 2015.  The information depicted in **Exhibit 5-1** shows a web page about a particular product being sold on the Overstock Website (e.g., Comfort Dreams Queen-size Mattress) that has been transmitted from at least one Overstock server to a remote user's terminal. The web page shows an initial cursor image of a black arrow (to the left of the main product image on the left side of the webpage) displayed on the display of a remote user's terminal prior to cursor modification.

Lexos Media v. Overstock.com, Inc.

Overstock Product-Level Webpage
(Post-Cursor Modification)
Iterations 1/2



**Exhibit 5-2**

**Exhibit 5-2** shows the same web page after the cursor modification that takes place when the user moves the cursor over any part of the main product image. The cursor modification results in several new features being displayed. Specifically: (1) a cursor with a zoom lens surrounding it is displayed, wherein the zoom lens comprises a semi-transparent box overlaying a portion of the main product image and highlighting that portion of the product image; and (2) a zoomed image appears in a frame to the right of the main product image frame. The zoomed image corresponds to the highlighted portion of the main product image that is the subject of the product-detail webpage.

Overstock, through the Overstock Website, has performed all of the required steps of claim 72 because it has initiated and controlled the performance of all of those steps, including the modification of the initial cursor image displayed on the display of the remote user's terminal by transmitting the information, instructions, and code for modifying an initial cursor image to the remote user's terminal from Overstock's server system.

# Lexos Media IP, LLC v. Overstock.com, Inc.

# EXHIBIT 6-CHART for Hover Zoom Iteration 3
# Dr. Russ Infringement Report

Lexos Media v. Overstock.com, Inc.

# U.S. Patent No. 5,995,102[1]

---

[1]  Overstock asserts that it did not implement Hover Zoom Iteration 3 on its Product Detail Webpages until October 2017. Therefore, Overstock may not have used this iteration within the '102 and '449 Patents Damages Period. I have nonetheless for the sake of completeness been asked to include charts herein concerning how Iteration 3 meets the Asserted Claims of the '102 and '449 Patents.

Lexos Media v. Overstock.com, Inc.

| `102 Patent Claim 72 | Accused Website Infringement Contention |
|---|---|
| 72[preamble]<br><br>A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising: | Overstock.com, Inc. ("Overstock"), through its website www.overstock.com (the "Overstock Website"), during the Relevant '102 Time Period (as defined in the main body of this report), has performed a method for modifying an initial cursor image displayed on a display of a remote user's terminal that is connected to at least one Overstock server via a network (e.g., the Internet) and providing the remote user's terminal with information, instructions, and code for modifying an initial cursor image, as shown in the examples set forth below. The method is incorporated into the technology referred to herein as dynamic zoom. As detailed below, this technology displays a main product image and modifies an initial cursor image into the shape and appearance of a specific image when a customer moves their cursor over the main product image. The cursor modification features various visual elements: a pointing hand, a zoom lens comprising a clear box highlighting a portion of the image (wherein the remaining portion of the main product image appears 'grayed out' outside the box), and a zoom image show to the right of the main product image of the highlighted portion of the main product image displayed in zoomed form and also tied to the cursor position so that when a user moves the zoom lens to highlight various portions of the main product image, the zoomed image is moved and updated accordingly so that it tracks the movement of the zoom lens whereby the zoomed image continues to match the highlighted portion of the main product image beneath the clear box. In this manner, the zoom lens indicates to the customer what portion of the main product image they will see in zoomed form thereby helping the customer visually inspect the depicted product.<br><br>For example, Overstock has performed a method for modifying an initial cursor image displayed on the display of a remote user's terminal, as shown in **Exhibits 6-1 and 6-2**. |

Lexos Media v. Overstock.com, Inc.

Overstock Product-Level Webpage
(Pre-Cursor Modification)
Iteration 3

Main Product Image



LEXOS_OVS_000639

**Exhibit 6-1**

**Exhibit 6-1** is a webpage captured by the Internet Archive Wayback Machine on November 6, 2018. The information depicted in **Exhibit 6-1** shows a web page about a particular product being sold on the Overstock Website (e.g., Serta Queen-size Mattress) that has been transmitted from at least one Overstock server to a remote user's terminal. The web page shows an initial cursor image of a black arrow (to the left of the main product image on the left side of the webpage) displayed on the display of a remote user's terminal prior to cursor modification.

Lexos Media v. Overstock.com, Inc.

Overstock Product-Level Webpage
(Post-Cursor Modification)
Iteration 3



**Exhibit 6-2**

**Exhibit 6-2** shows the same web page after the cursor modification that takes place when the user moves the cursor over any part of the main product image. The cursor modification results in several new features being displayed. Specifically: (1) instead of a black arrow, a pointing hand with a zoom lens surrounding it is displayed, wherein the zoom lens comprises a clear box overlaying a portion of the main product image and highlighting that portion of the product image because the rest of the product image (outside of four sides of the zoom lens) is greyed out; and (2) a zoomed image appears in a frame to the right of the main product image frame. The zoomed image corresponds to the highlighted portion of the main product image that is the subject of the product-detail webpage.

Overstock, through the Overstock Website, has performed all of the required steps of claim 72 because it has initiated and controlled the performance of all of those steps, including the modification of the initial cursor image displayed on the display of the remote user's terminal by transmitting the information, instructions, and code for modifying an initial cursor image to the remote user's terminal from Overstock's server system.