## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEXOS MEDIA IP, LLC,

     Plaintiff,

v.

                                   Case No. 22-2324-JAR-ADM

OVERSTOCK.COM, INC.,

     Defendant.

## MEMORANDUM AND ORDER

Plaintiff Lexos Media IP, LLC ("Lexos") alleges that Overstock.com, Inc. ("Overstock") has infringed three related patents: U.S. Patent Nos. 5,995,102 ("the '102 patent"), 6,118,449 ("the '449 patent"), and 7,975,241 ("the '241 patent") (collectively, the "Asserted Patents"). Overstock asserts counterclaims seeking declarations of noninfringement and that the Asserted Patents are invalid. This matter now comes before the court on three motions seeking to strike all or portions of the opposing party's expert disclosures and related documents: (1) Overstock's Motion to Strike the Expert Infringement Report of Dr. Samuel H. Russ, Ph.D., (2) Lexos's Motion to Exclude Untimely Documents and Strike Portions of Dr. Terveen's Rebuttal Infringement Report, and (3) Overstock's Motion to Strike the "Supplemental" Expert Report of Mr. Blok. (ECF 133, 134, 144.) For the reasons set forth below, all three motions are denied.

## I.    BACKGROUND

The '102 and '449 patents are entitled "Server system and method for modifying a cursor image," and the '241 patent is entitled "System for replacing a cursor image in connection with displaying the contents of a web page." (ECF 23-1, 23-2, 23-3.) The patents generally disclose "a server system for modifying a cursor image to a specific image displayed on a video monitor of

a remote user's terminal for the purposes of providing on-screen advertising." (ECF 23-1 at Abstract & col. 2, ll. 44-47; ECF 23-2 at Abstract & col. 2, ll. 47-50; ECF 23-3 at Abstract & col. 2, ll. 46-49.) Lexos's infringement contentions pursuant to D. KAN. PAT. RULE 3.1 asserted that Overstock has directly infringed the Asserted Patents "by using and/or putting into service . . . the overstock.com website which uses the cursor modification technology of the Asserted Patents." (*See* ECF 75-6, ECF 118-23 (Lexos Infringement Contentions).) More specific details about the infringement theories that Lexos disclosed are described below.

The court's claim construction order described the Asserted Patents as involving "technology that could be used to modify an internet user's cursor to display content such as an image or other message to promote the online purchase and use of products and services." (ECF 99.) The court construed only two claim terms—the "cursor display code" and "cursor display information." For the rest of the claim terms, the parties agreed that the court should follow the claim constructions adopted by the Eastern District of Texas in other cases involving the same Asserted Patents—*Lexos Media IP, LLC v. Amazon.com, Inc.*, Nos. 22-CV-00169, 22-CV-00175, 22-CV-00273, 2023 WL 5723642 (E.D. Tex. Sept. 5, 2023) (hereinafter "*Amazon*"), and *Lexos Media IP, LLC v. Nike, Inc.*, No. 22-cv-0311, slip. op. (E.D. Tex. Nov. 2, 2023) (hereinafter, "*Nike*").[1]

---

[1] Lexos has filed other patent infringement cases around the country, including a case against eBay Inc. involving the same patents (hereinafter, "*eBay*"). The court in the *eBay* case dismissed Lexos's claim for infringement of the '241 patent on the grounds that the patent is invalid. *See Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 1042 (N.D. Cal. Mar. 22, 2024). Lexos later settled the *eBay* case and moved the Federal Circuit to vacate the district court's underlying judgment invalidating the '241 patent or, alternatively, to remand the appeal with instructions that the district court consider a motion to vacate. *See Lexos Media IP, LLC v. eBay, Inc.*, No. 23-cv-06314, ECF 156-161 (N.D. Cal.). The Federal Circuit remanded the case to the district court because of the settlement but declined to vacate the judgment and said it was not taking a "position on whether the district court should grant vacatur." (*Id.* at ECF 162.) Lexos moved the district

On October 1, 2024, the court entered an amended scheduling order in which it set the deadlines that later triggered the current flurry of motions.  Among other things, this schedule required the parties to substantially complete fact discovery by December 31, 2024; to serve initial expert witness disclosures by December 31, 2024; to serve rebuttal expert witness disclosures by January 24, 2025; and to complete expert discovery by February 21, 2025.  (ECF 114.)  The December 31 initial expert witness disclosure deadline required expert disclosures to be "served by the party with the burden of proof."  (ECF 105, at 4.)

On December 31, 2024, Lexos served its initial expert infringement report.  This triggered the first motion, Overstock's Motion to Strike the Expert Infringement Report of Dr. Samuel H. Russ, Ph.D. ("the Russ Report").  In this motion, Overstock argues the court should strike Dr. Russ's infringement opinions on the grounds that he improperly relied on a new infringement theory that Lexos had not previously disclosed in its infringement contentions.

Two weeks after Lexos served the Russ Report, Overstock produced five documents (thirteen pages total) on January 13, 2025.  These documents allegedly substantiate that the accused cursor modification feature on the overstock.com website was disabled during the relevant damages period for the '102 and '449 patents.  And, on January 24, Overstock served a rebuttal non-infringement expert report in which Dr. Loren Terveen relied in part on these documents as well as an interview with an Overstock technical witness to opine that the accused functionality was in fact disabled during that time period.  These disclosures triggered the second motion that is now before the court, which is Lexos Media's Motion to Exclude Untimely Documents and Strike Portions of Dr. Terveen's Rebuttal Infringement Report.

court to vacate the judgment, but the district court denied that motion.  (*Id*. at ECF 166-67.)  The parties' filed a stipulation of dismissal in the *eBay* case on October 15, 2024.  (*Id.* at ECF 168.)

Lastly, on February 21, Lexos served what it called a "supplemental" report from its damages expert, Justin R. Blok. In this so-called "supplement," Blok increased his damage calculation by expanding the relevant damages period. This gave rise to the third motion that is now before the court, which is Overstock's Motion to Strike the "Supplemental" Expert Report of Mr. Blok.

## II.    LEGAL STANDARD

Rule 26(a)(2)(B)(i) requires expert witnesses to provide a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26(a)(2)(D) requires the parties to disclose their expert reports "at the times and in the sequence that the court orders." And Rule 26(e)(1) imposes an ongoing duty for parties to supplement or correct if the expert report "is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." But Rule 26(e)(1) "does not give [the parties] a right to disclose information in an untimely fashion." *Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192, at *3 (D. Kan. July 14, 2005) (citation omitted). "A party may not utilize Rule 26(e)(1) to sandbag his opponent or to deepen or strengthen his case where the information should have been included in the expert report." *Id.* (citation and internal quotation marks omitted).

## III.    ANALYSIS

### A.    OVERSTOCK'S MOTION TO STRIKE THE EXPERT INFRINGEMENT REPORT OF DR. SAMUEL H. RUSS, PH.D.

Overstock moves to strike the Russ Report on the grounds that it advances a new infringement theory that Lexos did not disclose in its infringement contentions. Overstock contends that Lexos's infringement contentions relied on an infringement theory in which the "modified cursor image" is a three-part combination of (1) a cursor that is modified into a "specific

4

image" that includes (2) a semi-transparent box and (3) the underlying product image.  Overstock characterizes this as the "zoom lens" theory of infringement.  Overstock contends that the Russ Report relies on a new infringement theory in which the "modified cursor image" is a four-part combination of Lexos's prior theory plus a "zoom image."  Overstock calls this the "zoom lens + zoom image" infringement theory.  Lexos counters that the Russ Report does not disclose a new theory because its infringement contentions placed Overstock on notice that both the zoom lens and zoom image were part of the accused functionality.  Lexos explains that it has always accused the "hover zoom" functionality on Overstock's product-detail webpage and that its infringement contentions specifically disclosed both the zoom lens and zoom image as the claimed "specific image" and "visual image" in the asserted claims.

The court may strike an infringement theory disclosed for the first time in an expert report. *Howmedica Osteonics Corp. v. Zimmer*, 822 F.3d 1312, 1324-25 (Fed. Cir. 2016) (district court did not abuse its discretion by precluding doctrine-of-equivalents infringement theory that was not disclosed in infringement contentions).  "Infringement contentions are intended to put a party on notice of the theories of infringement and streamline discovery."  *Trustees of Purdue Univ. v. ST Microelectronics, Inc.*, No. W-21-CV-00727-ADA, 2023 WL 4923972, at *2 (W.D. Tex. Aug. 1, 2023); *Realtime Data, LLC v. T-Mobile, U.S.A., Inc.*, No. 6:10CV493, 2013 WL 12149180, at *3 (E.D. Tex. Feb. 8, 2013) ("The purpose of [infringement] contentions is to provide notice while discovery is intended to develop details so that legal theories become more concrete as the litigation progresses.").  Consequently, a plaintiff does not need to "prove up" its case in its infringement contentions; rather, a patentee only needs to "provide reasonable notice to defendant why [it] believes it has a reasonable chance of proving infringement."  *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-cv-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015).  Thus, the

dispositive question in deciding whether to strike expert testimony is whether "the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSC, 2016 WL 612907, at *1 (N.D. Cal. Feb. 16, 2016); *accord Digital Reg of Tex., LLC v. Adobe Sys., Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014).

Here, the court finds that Lexos's infringement contentions provided adequate notice to support the infringement theories in the Russ Report and that Dr. Russ did not impermissibly substitute a new theory. Lexos's contentions point to a webpage of a particular product being sold on the Overstock website (in this example, a pebble glass bowl) and assert that the webpage's image of the pebble glass bowl "is then used to transform the initial cursor image . . . into the shape and appearance of the specific image shown" in 72[preamble] Exhibit 3, such as the "enlarged display of that portion of the product . . . appearing within the shaded, semi-transparent box to the right of the specific image." (*See* ECF 133-2, at 9-10, 14-15, 17-18.) Exhibit 3 is as follows:



As can be seen, this modified cursor image includes not only a zoom lens, but also a zoom image. Indeed, the court previously described its understanding of Lexos's infringement

contentions to include a zoom image.  (ECF 99, at 1 ("Lexos alleges that Overstock's zoom feature . . . allows a user to select a product image, which then generates a larger version of that image to the right of the original image that the user can navigate.").)  This disclosure provided Overstock with fair notice to support Dr. Russ's infringement theory that the modified cursor image involved a zoom image.  This is not a case in which Lexos markedly transformed the nature of its infringement theory, or in which Dr. Russ's infringement opinion is so considerably different from Lexos's contentions that it impacted Overstock's ability to prepare a defense.  *See, e.g.*, *Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1017-18 (affirming district court's decision to strike expert report where the patentee markedly changed its infringement theory and the other party was prejudiced by being unable to prepare an adequate defense to the new theory); *BookIT Oy v. Bank of Am. Corp.*, 817 F. App'x 990, 995 (Fed. Cir. 2020) (same, where the court found "the 'reservation engine' argument was considerably different from [the plaintiff's] original contentions").

Overstock's main arguments against allowing Dr. Russ's infringement theory rest on court filings from the *Amazon* and *Nike* cases in the Eastern District of Texas.  Overstock puts too much emphasis on the claim construction proceedings and orders entered in those cases.  For example, Overstock points out that the court granted summary judgment of noninfringement in the *Amazon* case based on the court's construction of the claim term "specific image."  But the current motion is not summary judgment.  Overstock will have the opportunity to make its non-infringement arguments, but they are issues that go to the merits of Lexos's infringement claims to be resolved, for example, on summary judgment or at trial.  At this procedural juncture, the applicable legal standard is simply whether Lexos's infringement contentions provided adequate notice of Dr. Russ's infringement theories.  They did.

The court therefore finds that Lexos's infringement contentions adequately disclosed its infringement theory by identifying the functionality at issue.  *See, e.g.*, *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11-CV-02243, 2014 WL 709865, at *16 (N.D. Cal. Feb. 23, 2014) (concluding infringement contentions adequately disclosed the plaintiff's infringement theory because they identified the functionality that meets the claim limitation).  Accordingly, Overstock's motion to strike the Russ Report is denied.

### B.  LEXOS'S MOTION TO EXCLUDE UNTIMELY DOCUMENTS AND STRIKE PORTIONS OF DR. TERVEEN'S REBUTTAL INFRINGEMENT REPORT

The next motion is a dispute over evidence bearing on the issue of whether Overstock disabled the accused hover-zoom feature on Overstock's product webpages from July 9, 2015, to October 27, 2017.  This time period is important because Overstock contends the '241 patent has already been declared invalid (*see* footnote 1, *supra*), and Lexos can recover damages from Overstock for infringement of the '102 and the '449 patents only for the time period beginning August 16, 2016 (six years before this lawsuit was filed) through June 25, 2017 (the date those two patents expired).

From the outset, Lexos has accused the hover-zoom feature of infringement based on archived screenshots it obtained from the Wayback Machine.  Lexos's complaint, amended complaint, and infringement contentions all utilized screenshots of archived webpages from the WayBack Machine depicting the accused feature in the 2012-2013 timeframe ("Zoom v1") and in the post-October 27, 2017 timeframe ("Zoom v2").  Lexos has no such screenshots for the time period when Overstock contends the hover-zoom feature was disabled, but it used the Wayback Machine screenshots from before and after the relevant damages period to draw the inference that this feature was continuously present on Overstock's website.

Meanwhile, Overstock repeatedly told Lexos throughout the course of this litigation that it first introduced the accused hover-zoom feature on its website in late 2012 to early 2013, disabled the feature in 2015 during a website overhaul, and then enabled a new version of the zoom functionality when Overstock completed the overhaul on October 27, 2017. (ECF 136-1 at 7-17 (Overstock's Resp. to Interrog. No. 18); ECF 134-10 (Rule 11 letters).) Lexos's Interrogatory No. 18 sought details concerning "changes to the hover zoom functionality" on the overstock.com website, the "reasons why the changes were made," and the "individuals responsible for, associated with, or knowledgeable of those changes." In response, Overstock provided a fifteen-page robust, detailed narrative, including citations to documents. (ECF 136-1, at 7-22 (Overstock's Resp. to Interrog. No. 18).) Among other things, Overstock's response explained that the hover-zoom feature was disabled beginning in late 2014 or early 2015 to facilitate a website redesign, and that this could be "verified by inspecting the 'product-page' JavaScript element on any given webpage on either the Wayback Machine or in the source code provided for inspection in June 2023." (*Id.* at 8-9.) Overstock went on to argue that Lexos had "willfully ignored" evidence that the accused hover-zoom feature did not exist during the relevant damages period. (*Id.* at 17-22.) In support, Overstock pointed to multiple Rule 11 letters it had sent to Lexos throughout this litigation and also the notable absence of any archived screenshots from the Wayback Machine showing the accused functionality on the overstock.com website during the relevant time period:

| Bates Range | Date of www.overstock.com Archive |
|---|---|
| LEXOS_OVS_000001–000010 | June 18, 2014 |
| LEXOS_OVS_000011–000014 | August 27, 2014 |
| LEXOS_OVS_000015–000018 | December 24, 2014 |
| LEXOS_OVS_000019–000020 | February 25, 2015 |
| LEXOS_OVS_000021–000022 | May 31, 2015 |
| LEXOS_OVS_000023–000024 | June 16, 2015 |
| LEXOS_OVS_000025–000390 | June 25, 2015 |
| MISSING | August 16, 2016 to June 25, 2017 ('102 and '449 Patent Damages Period) |
| LEXOS_OVS_000391–000392 | November 3, 2017 |
| LEXOS_OVS_000393–000396 | December 17, 2017 |
| LEXOS_OVS_000397–000398 | December 31, 2017 |
| LEXOS_OVS_000399–000402 | January 10, 2018 |
| LEXOS_OVS_000403–000598 | November 7, 2018 |
| LEXOS_OVS_000599–000602 | March 12, 2019 |
| LEXOS_OVS_000603–000606 | April 29, 2020 |
| LEXOS_OVS_000607–000638 | Screenshots from 2023 |
| LEXOS_OVS_000640–000653 | November 6, 2018 |

(*Id.* at 21.)  Overstock therefore said that Lexos "has not produced, and cannot produce, any evidence of the accused 'hover zoom functionality' during" the relevant damages period.  (*Id.*)

Dialing down on this issue, Overstock served Interrogatory No. 15 seeking Lexos's facts and evidence to support its contention that the accused functionality was "in use or available on the overstock.com website between August 16, 2016 and June 25, 2017."  (ECF 136-6, at 1.) Lexos responded as follows:

> Plaintiff relies on the Wayback Machine . . . from Defendant's website that show Defendant's website utilizing the Accused Instrumentality from 2014 to 2022. . . . These captures depict the Accused Instrumentality in use on the overstock.com website both before and after the 10-month timeframe of August 16, 2016, to June

25, 2017. . . .  Plaintiff has drawn the reasonable inference from these facts that Overstock has consistently used the Accused Instrumentality during the 10-month timeframe of August 16, 2016 to June 25, 2017.  Overstock has not pointed to any incontrovertible facts to show that this is an implausible inference.  Plaintiff will continue to investigate this matter and will supplement this Interrogatory Response should it find any material that alters its Response.

(ECF 136-6, at 2.)  Lexos never supplemented this interrogatory response.

Then, Lexos served the Russ Report on December 31 in which it disclosed more specifics about its theory that the accused hover-zoom feature was *not* disabled during the 2016-2017 time period.  Dr. Russ identified a collection of source code that he referred to as "OHover," and he opined that the accused hover-zoom feature was in fact active during the relevant time period "using the OHover Plugin."  (ECF 136-7, at 2-6.)  Based on these source code excerpts, he further opined that the Wayback Machine had improperly archived Overstock's website, which did not show the allegedly infringing functionality during this period.

Overstock explains that, upon receiving Dr. Russ's infringement report, Dr. Terveen and Overstock's technical representative, Aaron Bangerter, conducted an investigation and identified the five internal technical documents that are the subject of Lexos's motion ("Jira tickets" produced at Overstock_LM00002302-2312) rebutting Dr. Russ's contention that the "OHover" code was actively used during the damages period.  Overstock produced those documents just two weeks after the Russ Report and then served Dr. Terveen's noninfringement rebuttal report days later, on January 24.  Dr. Terveen relied on those documents to opine that the "OHover" code was not active during the damages period.  According to Overstock, these five documents showed that the "OHover" code was inserted in the Spring of 2015 as part of an A/B test comparing the "OViewer" and "OHover" variants of the functionality for Overstock's upcoming website overhaul, the "OViewer" prevailed in that test, and the "OHover" code was deactivated on July 9, 2015.  In other

words, Overstock contends the "OHover" code was dormant during the relevant time period, which is consistent with the archived screenshots from the Wayback Machine. (ECF 136, at 10.)

Lexos now moves to exclude these five documents as untimely and to strike the related portions of Dr. Terveen's noninfringement report that rely on these documents to show that Overstock disabled the accused hover-zoom feature on its product-detail web pages during the damages period. Lexos contends these documents should be excluded because they are inconsistent with the written and deposition discovery taken during the fact discovery period. (ECF 134, at 4.) Lexos calls Dr. Terveen's opinions "entirely new" noninfringement opinions that are "unsupported by any timely-produced evidence." (*Id.*) Lexos complains that these disclosures occurred after the December 31 deadline for the parties to complete fact discovery,[2] (2) the documents were responsive to some of Lexos's requests for production seeking documents relating to modifications of the accused functionality, and (3) Overstock's Rule 30(b)(6) witness was not prepared to testify about the "OHover" test code. (*Id.* at 8-15.)

Lexos's argument is meritless. Its own failure to timely comply with its discovery obligations led to this predicament. Up until Lexos served the Russ Report on December 31, the only evidence Lexos had disclosed as to how it intended to prove infringement during the relevant time period (when Overstock had allegedly disabled the accused feature) was to rely on archived screenshots from the Wayback Machine from before and after that time period to draw an inference that the feature was also present during that time period (despite the absence of any such archived screenshots from that time period), and to put the burden on Overstock to show that the allegedly

---

[2] Lexos mischaracterizes this deadline. The December 31 deadline was for the parties to "substantially" complete fact discovery, not a hard deadline to bar a party from having an opportunity to rebut evidence that the other side belatedly disclosed in expert reports, as was the case here.

infringing feature was disabled. But this rests on a mischaracterization of the burden of proving infringement in a patent case. The patentee, not the alleged infringer, bears the burden to prove infringement. *Agawam Co. v. Jordan*, 7 Wall. 583, 609 (1869); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) ("[T]he patentee bears the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence."). Even on counterclaims seeking a declaratory judgment of noninfringement, the burden remains on the patentee. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198-99 (2014) ("In our view, the burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit."). The burden cannot be shifted to the accused infringer to disprove infringement. *Ferring B.V. v. Watson Labs., Inc.-Fla.*, 764 F.3d 1401, 1408 (Fed. Cir. 2014); *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008). A patentee that fails to meet the burden to prove infringement "loses regardless of whether the accused comes forward with any evidence to the contrary." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011).

Lexos's lack of evidence that the accused feature was present on the overstock.com website during the relevant damages period has been a known weakness in its case since the outset. Yet Lexos never timely disclosed in response to Interrogatory No. 15 that it intended to rely on the "OHover" test code to try to overcome this deficiency. Instead, its vague and perfunctory interrogatory response relied on screenshots from the Wayback Machine that were not from the relevant time period and erroneously insinuated that Overstock would have the burden to prove non-infringement. Overstock's response to Interrogatory No. 18 fairly met the substance of these allegations by pointing to documentation to verify that the hover-zoom feature was disabled—namely, "by inspecting the 'product-page' JavaScript element on any given webpage on either the

Wayback Machine or in the source code provided for inspection in June 2023." (ECF 136-1, at 8-14.)

Then Lexos disclosed for the first time in the Russ Report served on December 31 that it intended to rely on Overstock's "OHover" test code to prove infringement during the relevant damages period. Overstock promptly responded by finding and producing five documents supporting its position that no zoom functionality was in use or accessible to the public on Overstock's website during the time of its website overhaul, *i.e.*, between Zoom v1 and Zoom v2, and instead an alternative functionality known as "OViewer" was used, which Lexos Media does not accuse of infringement. (ECF 136, at 7.) Overstock produced the five documents "as soon as they were discovered, on January 13 and 17," and then Overstock's noninfringement expert opined about them in his expert rebuttal report served on January 24. All of this was timely.

For similar reasons, the court is unpersuaded by Lexos's complaints about Overstock's Rule 30(b)(6) designee not being prepared to answer questions about the "OHover" code. Again, had Lexos properly disclosed the code functions it was relying on to prove infringement in advance of the deposition, Overstock's Rule 30(b)(6) designee could have been prepared to testify about that functionality. Likewise, the topics listed in Lexos's Rule 30(b)(6) notice referred to the accused functionality generically without calling out any specific code functions. (ECF 134-6, at 4.) Overstock's counsel pointed out that "there's thousands and thousands and thousands of pages of code, and you guys did not specify a particular function or set of code to have Mr. Bangerter review. If you had wanted him to review the hover function, you should have put that in there as a topic." (ECF 136-9, at 3 (Bangerter Dep. at 76:17-22).) Overstock even offered to hold open the deposition to allow the witness to investigate the "OHover" functionality, but Lexos declined. (*Id.* at 8 (Bangerter Dep. at 93:17-94:3).) Lexos also cancelled Dr. Terveen's deposition the day

before it was scheduled to occur.  That Lexos chose to turn a blind eye to these opportunities is a product of its own choosing.

Ultimately, Lexos accuses Overstock of "sandbagging tactics [that] offend all notions of fair play."  (ECF 134, at 4.)  These accusations are not well received.  The only party guilty of "sandbagging" here is Lexos, not Overstock.  Overstock is entitled to an opportunity to show that the "OHover" code functions were dormant during the relevant time period.  The court favors deciding cases on the merits.  There was no Rule 26 failure-to-timely-disclose violation here.  Lexos's motion is denied.

### C. OVERSTOCK'S MOTION TO STRIKE THE "SUPPLEMENTAL" EXPERT REPORT OF MR. BLOK

The court then turns to the parties' final motion, Overstock's Motion to Strike the "Supplemental" Expert Report of Mr. Blok—an eight-page report that Overstock says Lexos served at 8:12 p.m. on the last day of expert discovery, February 21.  By way of background, Blok is Lexos's damage expert.  In his initial expert report served on December 31, he opined that Lexos is entitled to a lump-sum royalty of no less than $20.5 million based on an allegedly infringing time period of October 28, 2017, to September 12, 2020,[3] even though Lexos can claim damages for up to six years prior to the filing of the complaint—so, going back to August 16, 2016.  In other words, Blok used a damage period that was inconsistent with Dr. Russ's infringement opinions.  Even though Dr. Russ opined that the accused hover-zoom feature was active during the relevant damage period for the '102 and the '449 patents (August 16, 2016, through June 25, 2017), Blok did not include this time period in his damage computation.  Expert discovery on damages proceeded.  Overstock served its rebuttal damage expert report from Dr. Nisha Mody on January

---

[3] The last of the Asserted Patents to expire, the '241 patent, expired on September 12, 2020.

24 and deposed Blok on February 17.  Overstock sent Lexos a Rule 11 letter on February 19 that not only addressed deficiencies in Lexos's infringement theory but pointed out that "Lexos has no damages theory for the '102 and '449 Patents" because Blok based his opinion on a time period when those two patents were expired.  (ECF 144-3, at 5.)  Two days later, Lexos served the so-called "supplemental" expert report from Blok in which he expanded the damage period to begin on August 16, 2016, increasing his lump sum royalty number to $29.6 million.  Overstock now moves to strike this supplemental report, arguing that it is a surrebuttal report not allowed by the scheduling order, is untimely, and prejudices Overstock.

The court finds that Blok's so-called "supplemental" report is not a proper supplement under Rule 26(a)(2)(E) and 26(e).  Lexos bears the burden of proof on the issue of damages.  *See Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021) ("The patentee has the burden of proving damages . . . .").  So, just like on the issue of infringement, Lexos's damage expert report was due on December 31.  Yet Lexos served inconsistent expert disclosures that day.  Dr. Russ opined that Overstock infringed during the damages period for the '102 and '449 Patents, whereas Blok's damage computation did not cover that time period.  Blok's February 21 "supplement" is clearly a belated attempt at a do-over—a damage computation that should have been disclosed in his initial expert disclosure on December 31.

The issue that is a closer call is whether Overstock is entitled to the remedy it seeks, which is exclusion of Blok's February report.  When "a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  The court has broad discretion to determine whether a Rule 26(a) or (e) violation is justified or harmless.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170

F.3d 985, 993 (10th Cir. 1999).  To determine whether a party's failure to comply with Rule 26 was substantially justified or harmless, the court applies the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Id.*  The burden to show substantial justification or harmlessness lies with "the party who failed to make the required disclosure."  *Adkins v. TFI Family Servs., Inc.*, No. 13-CV-2579-DDC-GLR, 2017 WL 3130587, at *4 (D. Kan. July 24, 2017).

Here, the court is not persuaded that Overstock was surprised by Lexos or Blok's attempt at a do-over.  Overstock knew about the error in the damages period in Blok's initial expert report. Lexos's infringement contentions clearly stated that the "Relevant Time Period" for infringement was "the period of time from at least six years prior to the filing of the complaint against the Defendant through the date of the expiration of the Asserted Patent."  (ECF 123-2, at 7 ('102 Patent), 20 ('449 Patent), 73 ('241 Patent).)  And Dr. Russ substantiated this full time period with his opinions that the various iterations of the accused hover-zoom feature infringed the Asserted Patents, including during the time period when Overstock contends the feature was disabled. Overstock even alerted Lexos to the error via its rebuttal expert report and a Rule 11 letter.  But although the court does not believe Overstock was surprised by Lexos's attempt to fix the mistake, the court is nevertheless persuaded that Overstock was prejudiced by the belated disclosure. Overstock was put to the time and expense of proceeding with expert damage discovery in a patent case—a costly endeavor—all based on the opinions Blok disclosed in his initial expert report.  If Blok's so-called "supplement" stands, Overstock points out that "[a]t minimum, Overstock would need to take Blok's deposition again, and Overstock's damages expert would need to review and

17

respond to the February report.  At that point, Lexos would also likely request the ability to redepose Dr. Mody again on the rebuttal of Blok's February Report."  (ECF 144, at 10.)

The court turns next to the ability to cure this prejudice.  To that end, Overstock notably does not seek its expenses for the do-over.  Instead, it seeks a more extreme sanction: the tactical advantage of having Blok's untimely opinions be excluded, which in this particular instance would result in Overstock effectively prevailing on Lexos's infringement claims for the '102 and '449 patents because Lexos would have no evidence to prove damages.  The Tenth Circuit has expanded the *Woodworker's Supply* factors by cautioning against excluding evidence as a Rule 37(c)(1) sanction where exclusion would have a dismissal-like effect on a party's claim.  *See HCG Platinum, LLC v. Preferred Product Placement Corp.*, 873 F.3d 1191, 1201 (10th Cir. 2017) (finding district court abused its discretion by imposing a discovery sanction (i.e., exclusion of evidence) that necessarily barred a party from pursuing its counterclaims).  Where the exclusion of evidence would have the necessary effect of dismissal, the court must evaluate the efficacy of lesser sanctions.  *Id.* at 1203 (finding district court committed reversible error by excluding evidence of damages that were not timely disclosed, which effectively resulted in dismissal of the counterclaim); *see also Gillum v. United States*, 309 F. App'x 267 (10th Cir. 2009) (same, where district court excluded expert witness who did not comply with the deadlines for expert disclosures and this necessarily resulted in the grant of summary judgment).  Here, there is ample time and opportunity in the schedule to ameliorate any prejudice to Overstock.  Because of the pending motions, the court recently continued the pretrial conference and vacated the dispositive-motion deadline and the deadline for motions challenging admissibility of expert testimony.  During the process of formulating the pretrial order, Overstock may request any other measures it believes are needed to cure the prejudice from the late disclosure.  Lexos's belated disclosure will not disrupt

the trial in this case. Trial is not yet scheduled and will not be scheduled until after the presiding district judge rules dispositive motions.

Turning to the last *Woodworker's* factor, the court finds that Lexos's belated disclosure reflects willful disregard of its discovery obligations. During Blok's deposition on February 17, he testified that he was relying on Overstock's representation in its interrogatory answer that it did not utilize the accused hover-zoom functionality "during the August 16, 2016, to June 25, 2017 damages period of the '102 and '449 Patents." (ECF 144-2, Blok Dep. at 104:15-17; ECF 148-5, Resp. to Interrog. 12.) He further testified that Lexos's counsel told him to assume damages would not begin before October 28, 2017. (ECF 144-2, Blok Dep. at 98:15-101:9.) In other words, Blok admitted that Lexos did not coordinate the exchange of information between Dr. Russ and Blok sufficiently to make sure they were taking consistent positions on issues on which Lexos bears the burden of proof (infringement and damages) in the initial expert disclosures served on December 31. Lexos offers no explanation for this. This error was obvious and so critical that it was potentially claim-dispositive, yet Lexos allowed expert discovery on damages to proceed for nearly two months without bothering to correct it until less than four hours before the deadline for expert discovery expired.

Furthermore, the court finds that the series of excuses Lexos has manufactured to try to justify the belated disclosure amount to bad faith. To begin, Lexos submitted a declaration from the attorney who claims to be responsible for the damages aspect of the case in which he explains that he was in trial in California from January 17 to January 27; then had to deal with a personal crisis for two weeks after that; finally shared Dr. Mody's report with Blok on Friday, February 14, the business day before Blok's deposition on Monday, February 17; and then Blok conducted the follow-up necessary to prepare and serve his so-called "supplemental" report on February 21. But

19

all of this post-dates the December 31 deadline when Lexos should have coordinated Dr. Russ and Blok's opinions to make sure they were consistent on issues on which Lexos bears the burden of proof. Also, Lexos is represented by multiple attorneys in this case, all of whom are responsible for complying with court-ordered discovery deadlines. Lexos cannot shirk its responsibility by placing it on only one of its attorneys of record, or by claiming that Blok himself did not have the pertinent information that triggered the so-called "supplemental" report until February 14. Lexos is responsible for complying with its discovery obligations collectively through all of its agents and representatives in this litigation.

In addition, Lexos's attempts to downplay its responsibility for the error reek of gamesmanship. Lexos tried to fix the mistake under the guise of supplementation, when the so-called "supplement" was clearly a do-over. And it served this so-called "supplement" less than four hours before the close of discovery. When it did so, it tried to deflect blame onto Overstock. Lexos's tortured logic goes something like this: Blok's December 31 report did not calculate damages based on the time period when the accused hover-zoom feature was allegedly disabled, but then Overstock produced documents and Dr. Terveen's non-infringement report providing additional evidence that the feature was disabled, so then Blok recalculated damages to include that period. This argument makes no sense. The fact that Overstock produced additional evidence showing noninfringement during a particular time period does not justify adding that time period to the damage computation. Moreover, Blok claimed in his "supplementation" that at the time he issued his December 31 report he "was unaware of [Dr. Russ's] opinion that 'Overstock continued to use the hover zoom functionality in an infringing manner.'" (ECF 144-4 ¶ 6, at 5.) This is untrue. Blok's December 31 report explained that Blok understood "Dr. Russ had reviewed Overstock's product level webpage HTML code during this period including JavaScript for

performing the Accused Functionality.  It appears that the source code for the Accused Functionality was still present during the time-period at issue, and Dr. Russ did not identify any corresponding code that would either disable the Accused Functionality or circumvent its performance." (ECF 144-1, at 7 n.43.)  In support, Blok cited "Interview of Dr. Russ."  (*Id.*)

Considering the totality of the *Woodworker's* factors, the court finds that Lexos's noncompliance with the initial expert disclosure requirements was not substantially justified nor harmless, and Lexos's shenanigans in trying to rectify this mistake have unnecessarily wasted resources and reflect poorly on Lexos.  All of that said, the court is mindful that "where exclusion of evidence under Rule 37(c)(1) has the necessary effect of dismissal, as here, district courts should, in conjunction with the traditional *Woodworker's* inquiry, carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile." *HCG Platinum, LLC*, 873 F.3d at 1205.  Here, the mistake was obvious and there is ample time and opportunity before trial for the court to ameliorate the prejudice to Overstock from the belated disclosure—an issue the court is willing to discuss with the parties in connection with the pretrial conference.  For these reasons, the court denies Overstock's motion to strike Blok's "supplemental" damages expert report.

**IT IS THEREFORE ORDERED** that Defendant Overstock's Motion to Strike the Expert Infringement Report of Dr. Samuel H. Russ, Ph.D. (ECF 133) is denied.

**IT IS FURTHER ORDERED** that Plaintiff Lexos Media IP, LLC's Motion to Exclude Untimely Documents and Strike Portions of Dr. Terveen's Rebuttal Infringement Report (ECF 134) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike the "Supplemental" Expert Report of Mr. Blok (ECF 144) is denied.

Dated March 28, 2025, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge