IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEXOS MEDIA IP, LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No. 2:22-cv-02324 |
| OVERSTOCK.COM, INC., | |
| *Defendant.* | |

### DECLARATION OF SANDEEP SETH

I, Sandeep Seth, declare:

1.  I am an attorney with the law firm of SethLaw PLLC ("SethLaw") and counsel for Plaintiff Lexos Media IP, LLC ("Plaintiff" or "Lexos Media").

2.  I am an attorney of record who has appeared in this case on behalf of Lexos, admitted to practice before this Court *pro hac vice*.

3.  I make this declaration based on my personal knowledge and if called to testify to the contents hereof, I could and would competently do so.

4.  On December 15, 2025 the Court Ordered each attorney for Lexos to address their respective roles in the drafting, review, and filing of Documents 193 and 194 and to show cause as to why they should not be sanctioned under Rule 11.

5.  I was primarily responsible for drafting our Opposition to Defendant's Motion to Exclude Dr. Russ ("Document 194"). I wrote an initial draft brief for Document 194 that included the majority of the document.  On July 4, 2025, I added AI generated citations. I have never previously used artificial intelligence to add citations to a legal brief.  The circumstances that led me to take this unprecedented shortcut were laid out in my August 11, 2024 declaration(Dkt. 211-1) and I will not repeat them here, other than to summarize that I had intended but failed to check

1

the AI generated caselaw citations due to back-to-back medical emergencies involving my mother and a close aunt, whose lives we were actively trying to save but who regrettably respectively passed on July 19, 2025 and August 2, 2025.  I attach my prior declaration hereto for the Court's convenience as Exhibit A, as this declaration is intended to supplement that prior declaration.

      6.      Per the Court's December 15, 2025 Order, I will add that neither co-counsel nor Lexos were aware of the foregoing at the time of drafting and Lexos was not billed for any of my time in the drafting of the brief (and the portion of Document 193) containing the erroneous citations or for any subsequent time in connection with their removal.

      7.      I add the following chronology as to how the defective citations and quotations in Plaintiff's briefing came to pass:

      a.      On or before June 28, I wrote a first draft of the substance of the argument for Plaintiff's Opposition to Defendant's Motion to Exclude Dr. Russ, based upon an accurate rendition of the facts of the case.  Before circulating that first draft to our litigation team, I decided to use ChatGPT as a shortcut to find 10th circuit and Federal Circuit case law consistent with the facts of the case.  Specifically, I prompted ChatGPT the following (with misspellings corrected):

> In my patent case, my technical expert used an incomplete construction of the term "cursor image." The Court had originally con[s]trued the term as "a moveable image on a display screen whose position can be controlled through a user interface." Later, the Court added to that construction "and that indicates where user input can be received." My technical expert in his report indicated that he was aware of the complete construction but inadvertently left off the tail end of it, i.e., "and that indicates where a user input can be received." The other side as moved to strike his report as unreliable because of his use of the incomplete construction. Using Federal Circuit and Kansas federal court case law, fashion an argument that the report should not be struck here and what the appropriate remedy should be.

In response, ChatGPT provided the following case cites and "quotes":

      **Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1224 (Fed. Cir. 2006)**:

> "Expert testimony should not be excluded simply because the expert applied an incorrect claim construction, so long as the expert's analysis can be understood and evaluated in light of the court's proper construction."

> **AVM Technologies, LLC v. Intel Corp., 927 F.3d 1364, 1370–71 (Fed. Cir. 2019):**

> "[T]he appropriate response to a potential flaw in an expert's methodology is cross-examination, not exclusion.

> **Hockett v. City of Topeka, No. 19-4037-DDC, 2020 WL 6796766, at *3 (D. Kan. Nov. 19, 2020):**

> "The exclusion of evidence is an extreme sanction, and courts should prefer less severe remedies, particularly where the error appears inadvertent or can be cured without prejudice."

> **Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999):**

> Courts consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the potential for disruption; and (4) the bad faith or willfulness involved."

> **i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831, 854 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011):**

> "[T]he question of whether the expert is credible or whether his theories are correct given the partial reliance on an incorrect claim construction is for the jury to decide after cross-examination."

I incorporated three of these four case cites and quotes into my draft brief and circulated it, intending to double check the citations, which I subsequently failed to do. I should not have incorporated these without checking them first.

    b.    Between that first circulation on June 28, 2025 and on July 4, 2025, I wrote a second draft that substantially expanded the factual basis of our argument and our detailed arguments based upon those facts. Before circulating that draft, I again queried ChatGPT with the following prompt (misspellings corrected) to find additional case law:

> In my patent infringement case, the defendant is attempting to strike my expert's testimony as unreliable because for one claim term, "cursor image" he inadvertently only used the portion of the stipulated construction that

3

> defined the term as "a moveable image on a display screen whose position can be controlled through a user interface." and omitted the following additional stipulated refinement to the term: "and that indicates where user input can be received." However, the Defendant does not dispute that their accused modified cursor image includes a pointer that indicates where a user input can be received. Taking the role of a judge, write an order that denies the motion to strike with caselaw support for the proposition that where the expert report is criticized for inadvertently using an immaterial incomplete claim construction, the remedy is not to strike the entire report/testimony of that expert. Use Federal Circuit case law and 10th circuit standards as a guide.

ChatGPT responded with the following "case law" based legal arguments that I incorporated into that second draft, again failing to double check them, prior to circulating it:

> "The Federal Circuit has cautioned against striking expert opinions for immaterial or correctable errors in claim construction, particularly where the overall analysis is sound and does not mislead the jury. See Flexuspine, Inc. v. Globus Med., Inc., 879 F.3d 1369, 1375 (Fed. Cir. 2018); i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 856–57 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011)."

> "The Tenth Circuit recognizes that the preferred method of addressing admissibility disputes that go to weight rather than fundamental reliability is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not wholesale exclusion. United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006); Daubert, 509 U.S. at 596."

> "Similarly, under Tenth Circuit standards, exclusion is a drastic remedy reserved for fundamentally unreliable expert analysis, not for technical deficiencies that can be addressed through cross-examination. Rodriguez-Felix, 450 F.3d at 1123; Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000)."

> "The Federal Circuit has consistently held that 'technical flaws in an expert's methodology or assumptions go to the weight of the evidence rather than its admissibility.' Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1314 (Fed. Cir. 2014); see also Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209, 1221 (Fed. Cir. 2006) ("[A]n alleged error in expert analysis does not justify exclusion when it does not negate the reliability of the methodology.')."

> "As in i4i, where the expert's failure to reference the precise claim construction language did not warrant exclusion, the alleged flaw 'goes to the weight of the testimony, not its admissibility.' 598 F.3d at 856."

8.     Being untrained on ChatGPT, and being a novice to it, I used the prompt for ChatGPT to "tak[e] the role of a judge …" because I thought this would help ensure ChatGPT

4

identify the best and most on-point additional case law that I could add to the brief consistent with our facts.

9. I have never before used ChatGPT to identify cases for me or make a legal argument to be incorporated in any filed pleading, and I never should have relied on the cases or the quotes and text I received from it in response to my prompts in my draft without checking them for accuracy. It was my intention at the time to check them prior to any filing with the Court, but I failed to do so either because I thought I had already done so, or just because of my scrambled state of mind.

10. As I previously declared, not by way of excuse, but by way of explanation, personal circumstances had a profound effect on my mental state at the time of this error that left me distraught and somewhat distracted. Both my aunt and mother were hospitalized in the process of dying during that time and both died shortly thereafter. I can honestly say that these circumstances contributed to my failure to choose to find case law on my own, pursuant to my normal practice, and to instead use ChatGPT as a short cut. I do believe these circumstances also led to my failure to double-check for accuracy the ChatGPT generated case cites and quotes because my focus and time was largely spent in hospitals and dealing with my aunt and mother's respective significant health situations.

11. I cannot express how sorry I am for this set of mistakes. I should not have relied upon ChatGPT to identify caselaw and generate quotes attributable to case law for me no matter what my personal circumstances were at the time. I should never have included that in a draft without checking it first. I should never have failed to check its accuracy. All these mistakes are mine and mine alone. My co-counsel was not aware that I had used AI as a short cut to add case law and legal argument to the brief. Nor would they have had reason to know of this because my

use of AI in this manner was unprecedented in this case or any other. I have come to understand the limits of ChatGPT and it will be my practice going forward to never use AI to identify case law or quotes attributed to case law from AI. We are a small firm, essentially comprising myself and my paralegal who also acts as our office manager. My paralegal has never used AI to identify caselaw but has nonetheless been instructed never to do so in the future. Any future employees or independent contractors will be advised of the same.

12. For over thirty years I have practiced law with integrity. I am licensed in Texas and California and registered to practice before the United States Patent & Trademark office, as well as admitted to practice before a host of federal courts and the Court of Appeals for the Federal Circuit. I have never been sanctioned or even accused of misstating any case law nor would ever deliberately consider doing so as even a possibility. My professional practice has been to always err on the side of caution when stating facts and case law. Over my career, I have been a fierce proponent of the principle that zealous representation of our clients is necessary for us to fulfill our roles in our legal system, but that such advocacy must always be accompanied by strict and faithful adherence to the facts and law, or a good faith argument for modification of the law. Notwithstanding my mistake here, I have always made it a practice to cite facts and cases consistent with that principle.

13. My reputation and earnestness to represent clients before tribunals to highest of ethical standards is ingrained in my nature. I treat fidelity to law equally with fidelity to fact and would never deliberately mislead a tribunal on either fact or law. That I made such a blunder here is something that I will not forgive myself for having done. My practice largely involves co-counseling with other firms. To have on public record this blunder will significantly impact on my practice because firms will be less likely to want to use my co-counseling services. I state this

only to emphasize that I did not and would not have deliberately cited incorrect case law or legal argument, not only for the sake of reputation, but because I would never deliberately do anything that could impact my ability to financially support my family and firm.

14. Despite my failure to double check the AI generated citations, I intended the results of my specific query to provide accurate case citations to bolster my arguments and provide additional corroboration to the approximately 95% of humanly generated brief and substantive arguments contained therein I personally drafted based upon the facts in this case and not any AI output. However, I now know that the citations resulting from my two queries were in fact from non-existent cases or contained non-existent quotes. I now am fully aware of "AI hallucinations" and take full and sole responsibility for the resulting misinformation to this Court. I have never before, and even in this instance have not, intended to mislead the Court or members of the Bar in any way. I appreciate my duty to the Court and the public and acknowledge having fallen short in this particular instance of the high standard that I set for myself and what is expected of me as a practitioner.

15. I would respectfully request that if this Court is determined to administer any sanction, that any such action be borne by me, and me alone.

16. I must again apologize to the Court, to Overstock, to Lexos, to my opposing counsel and to my co-counsel for the impact on them of my failure set forth above. Had I realized there was any inaccuracy in any of the statements I incorporated, I would have immediately corrected it and avoided all of the impact on you all. This experience has been personally and professionally shameful and embarrassing and one I can guarantee I will never repeat.

7

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed by me on January 4, 2026, in Houston, TX.

_____
Sandeep Seth

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEXOS MEDIA IP, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>OVERSTOCK.COM, INC.,<br><br>*Defendant*. | Case No. 2:22-cv-02324<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |

DECLARATION OF SANDEEP SETH IN SUPPORT OF PLAINTIFF'S
REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE CORRECTED OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE THE TESTIMONY OF SAMUEL RUSS, Ph.D.

I, Sandeep Seth, declare as follows:

1. I am an attorney admitted to practice before this Court and serve as counsel for Plaintiff in the above-captioned matter. I make this declaration in support of Plaintiff's Motion for Leave to File Corrected Opposition to Defendant's Motion to Exclude the Testimony of Samuel Russ, Ph.D.

2. I respectfully and fully acknowledge that the filed Opposition to Defendant's Motion to Exclude the Testimony Of Samuel Russ, Ph.D. contained legal citations and quotes derived from research generated in part using artificial intelligence (AI) tools, which were not independently verified prior to submission. This included fictitious cases and inaccurate quotations. I take full responsibility for these errors.

3. While I authored the majority of the document, the portions derived from AI-generated text should have been thoroughly checked and corroborated before filing. That they were not is inexcusable. It reflects a lapse in judgment on my part, and I offer my sincere and unqualified apology to this Court, to my co-counsel, to opposing counsel, to Defendant Overstock.com, Inc.,

1

and to my client because it gave the incorrect appearance that we have not taken these proceedings before this Court the seriousness that they deserve.

4. I do not offer the following as an excuse, but solely as context to explain the extraordinary personal circumstances under which this occurred. During the period of drafting and filing, I was serving as a family advisor and caregiver for two close family members who were at the time in acute medical crisis.

5. My maternal aunt, with whom I have been very close since 1982 for reasons beyond the scope of this declaration, was hospitalized for addressing the effects of a severe heart attack. I was actively assisting in efforts to secure her candidacy for a heart transplant and, when that was not possible, for the insertion of a Left Ventricular Assist Device (LVAD). I was present at the hospital with her for many days during this period. Despite the success of the procedure itself, she tragically passed away following the procedure on July 19, 2025.

6. At the same time, my mother was undergoing repeated ailments and hospitalizations due to complications from rapidly progressing dementia. As her eldest son and primary support, I was deeply involved in her care and end-of-life decisions. She blessedly passed away on August 2, 2025, from renal failure one week after my aunt's funeral. Her funeral is August 8, 2025.

7. These overlapping personal situations weighed heavily on my time, attention and emotional state during the time of original filing. I was unable to speak about it when we filed the Motion for Leave to File Corrected Opposition to Defendant's Motion to Exclude the Testimony of Samuel Russ, Ph.D.

8. I fully acknowledge that, regardless of circumstance, this does not excuse submitting material to the Court that failed to meet the standards of verification and accuracy the

2

profession requires and which this Court, our client and the opposing party—and the justice system—deserves. Importantly, this error was unprecedented and does not reflect the seriousness of the approach that Lexos Media has otherwise taken throughout these proceedings. I did not intend to file the citations unreviewed but in my distraction I failed to have my office do so.

9. I deeply regret the oversight and, while I cannot image these circumstances happening again, wherein we are now cremating my mother two weeks after my aunt, I am committed to ensuring that such a lapse does not occur again. I have already instituted stricter internal review procedures to ensure that all future filings are fully sourced, accurate, and independently verified.

10. I respectfully submit this declaration to accompany a corrected filing and to affirm my commitment to the integrity of these proceedings. The error was mine alone and should not reflect upon my co-counsel, opposing counsel, and the parties in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 8, 2025 at Houston, Texas

_____
Sandeep Seth
Counsel for Plaintiff

3