IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEXOS MEDIA IP, LLC, | |
| **Plaintiff,** | |
| v. | Case No. 22-2324-JAR |
| OVERSTOCK.COM, INC., | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Lexos Media IP, LLC ("Lexos") brings this patent infringement action against Defendant Overstock.com, Inc. ("Overstock"), alleging it infringed three patents that relate to modifying the display of a cursor image on a website. This matter is before the Court on Defendant Overstock's *Daubert* Motion to Exclude the Testimony of Samuel Russ, Ph.D. (Doc. 174). The motion is fully briefed, and the Court is prepared to rule. For the reasons described below, the Court grants Overstock's motion to exclude Dr. Russ's testimony.

## I.      Background

Lexos generally alleges in this case that Overstock's "hover-zoom" website feature infringes its patents. This feature allows a user to select a product image, creating a shaded, semi-transparent box around the cursor. An image to the right is then generated showing a larger, zoomed-in image of the product.

The three patents are: U.S. Patent Nos. 5,995,102 ("the '102 Patent") and 6,118,449 ("the '449 Patent"), both of which are entitled "Server system and method for modifying a cursor image"; and U.S. Patent No. 7,975, 241 ("the '241 Patent"), entitled "System for replacing a cursor image in connection with displaying the contents of a web page." Lexos alleges in the

Amended Complaint that Overstock directly infringed Claim 72 of the '102 Patent; Claims 1, 38, and 53 of the '449 Patent; and Claim 35 of the '241 Patent since at least 2016.

Claim 72 of the '102 Patent is representative:

> 72. A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising:
> receiving a request at said at least one server to provide specified content information to said user terminal; providing said specified content information to said user terminal in response to said request, said specified content information including at least one cursor display instruction and at least one indication of cursor image data corresponding to a specific image; and transforming said initial cursor image displayed on said display of said user terminal into the shape and appearance of said specific image in response to said cursor display instruction, wherein said specified content information includes information that is to be displayed on said display of said user's terminal, wherein said specific image includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal, and wherein said cursor display instruction indicates a cursor display code operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image responsive to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal.[1]

Every asserted patent claim in this case requires a "cursor image."  In this case, the parties agreed to construe that term as it was construed by the court in a previous case involving these patents, *Lexos Media, IP, LLC v. Nike, Inc.*: "a movable image on a display screen whose position can be controlled through a user interface *and* that indicates where user input can be received."[2]

---

[1] Doc. 1-1, '102 Patent at 24:10–36.

[2] No. 22-311, slip op. at 10–11, 19 (E.D. Tex. Nov. 2, 2023) (emphasis added) [hereinafter, *Nike* Order]; Docs. 99, 92-1 at 8.

Plaintiff designated Samuel Russ, Ph.D., as its technical expert in this case. In his opening report that was disclosed on December 31, 2024, he incorrectly identified the stipulated claim construction for "cursor image" as "a movable image on a display screen whose position can be controlled through a user interface."[3] In other words, he failed to include the second part of this Court's construction, "and that indicates where user input can be received." He also included the mistake in his rebuttal report.[4]

Dr. Russ's opinion includes the following:

> Overstock, in general, modifies a cursor when the cursor is moved over an image of a product. *See*, Ex. 5. The initial cursor is modified into a cursor image in the shape and appearance of a specific image that comprises (1) a clear box; (2) with a pointing-hand cursor image in the layer above the clear box; (3) a portion of the image of the product in the layer beneath it that is highlighted by the clear box that is the subject of the displayed web page; and (4) a zoom image that corresponds to the highlighted portion of the product image.[5]

Dr. Russ has not been deposed, but Lexos attached to its summary-judgment response a declaration he executed on April 10, 2025, after expert disclosure deadlines had passed.[6] He states that he inadvertently used the wrong claim construction for "cursor image" in his report. He asserts that he "do[es] not consider them to be substantively different . . . . because cursor images inherently include an image that indicates where a user input may be received."[7] In the response to Overstock's *Daubert* motion, Lexos asks the Court to allow it to supplement Dr. Russ's expert report to reflect that his opinion accounts for the correct claim construction for

---

[3] Doc. 174-2 ¶ 45.

[4] Doc. 174-3 ¶ 108.

[5] Doc. 174-2 ¶ 117.

[6] Doc. 193-3.

[7] *Id.* ¶¶ 4–5.

"cursor image."  Overstock objects and moves to strike the Russ declaration as an untimely effort to modify his expert report.

## II.      Overstock's Motion to Strike and Lexos's Motion for Leave to Supplement

The Court first addresses Overstock's motion to strike and Lexos's request to supplement Dr. Russ's report with the declaration Lexos attached to its response to Overstock's previously-denied motion for sanctions and to its response to Overstock's summary-judgment motion.[8]

Under Fed. R. Civ. P. 26(a)(2), an expert's report must include "a complete statement of all opinions the [expert] will express and the basis and reasons for them."  Rule 26(e)(2) governs a party's duty to supplement, which is required "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective  information has not otherwise been made known to the other parties during the discovery process or in writing."[9] As the Ninth Circuit has explained:

> Rule 26(e) creates a "duty to supplement," not a right.  Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed.  Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."[10]

---

[8] Docs. 161-6, 193-3.  The Court previously denied this motion as moot when deciding Overstock's Rule 11 motion because it did not find a Rule 11 violation, and stated it would decide the issue in the context of this *Daubert* motion.  Doc. 179 at 8.

[9] Fed. R. Civ. P. 26(e)(1); *see Crawford v. ITW Food Equip. Grp.*, *LLC*, 977 F.3d 1331, 1341 (11th Cir. 2020) ("Supplementation is permitted under Rule 26(e) to correct inaccuracies or add information not available when the report was filed.").

[10] *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009) (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)); *see also Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. CV155477MCALDW, 2019 WL 581544, at *3 (D.N.J. Feb. 13, 2019) ("Courts have repeatedly emphasized the limited scope of supplementation permitted by Rule 26(e) . . . ." (quoting *Novartis Pharm. Corp. v. Actavis, Inc.*, No. 12-366, 2013 WL 7045056, at *7 (D. Del. Dec. 23, 2013))); *Lidle v. Cirrus Design Corp.*, No. 08 CIV. 1253, 2009 WL 490720, at *6 (S.D.N.Y. Dec. 18, 2009) ("It should be assumed that at the time an expert

The Court denies Lexos's motion to supplement Dr. Russ's report.  The cases construing the supplementation rule make clear that "Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions."[11]  Lexos does not seek to supplement Dr. Russ's expert opinions with new information he received after he wrote his report.  And the Court does not agree with Lexos's characterization of Dr. Russ's mistake as merely a "typographical error" that may be appropriately addressed through supplementation.  Dr. Russ failed to consider the correct construction of a term that is included in all of the patent claims at issue in this case when he rendered his opinion.  This substantive error was made in both his original and rebuttal reports.  Dr. Russ may not substantively change the underlying claim construction for "cursor image" through his declaration under the guise of supplementation under Rule 26(e).

Because Dr. Russ's declaration is not admissible as a supplemental report under Rule 26(e), and the deadlines for him to file his initial and rebuttal reports have expired, the Court must exclude the declaration unless Lexos's failure to timely disclose is "substantially justified or is harmless" under Fed. R. Civ. P. 37(c).  In determining whether a party's failure to disclose under Rules 26(a) or (e) is harmless, the Court looks to the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure

---

issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought.").

[11] *Ezaki Glico*, 2019 WL 581544, at *3 (quoting *In re Asbestos Prods. Liability Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013)); *see also Aid for Women v. Foulston*, No. 03-1353-JTM, 2005 WL 6964192, at *3 (D. Kan. July 14, 2005) ("Rule 26 does not bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline, even if the rule's pretrial time limit is satisfied." (citation modified)).

the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[12]

These factors counsel in favor of exclusion.  Dr. Russ included the claim construction mistake in his initial report on December 31, 2024, and then repeated the mistake in his rebuttal report filed several weeks later on January 24, 2025.  At least as early as February 19, 2025, Overstock brought the error to Lexos's attention when it sent its Rule 11 safe harbor letter.[13] Lexos did not submit the corrective declaration from Dr. Russ until April 10, 2025, when it attached it to its response to Overstock's Rule 11 motion.[14]  Lexos also attached that declaration to its summary-judgment response filed on July 7, 2025.[15]  Thus, Lexos and Dr. Russ were on notice by at least February 19, 2025 of the error in the safe harbor letter.  Yet, Lexos did not immediately attempt to correct the mistake, and instead waited until the issue was brought to the Court's attention via a Rule 11 motion before it sought to correct through Dr. Russ's declaration.

Moreover, the Court notes that mistaken expert disclosures, and follow-up attempts to untimely fix the mistakes as "supplements" appear to be a trend with Lexos.  Lexos apparently committed the same error in the *Amazon* case—its infringement expert in that case used an incorrect claim construction that drew a motion to exclude by the defendants.[16]  And in this case, Lexos belatedly disclosed what it called a "supplemental" expert report by its damages expert, Mr. Blok, drawing a motion to strike.  Judge Mitchell found that, once again, Lexos attempted to

---

[12] *Gillum v. United States*, 309 F. App'x 267, 269 (10th Cir. 2009) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins.*, 170 F.3d 985, 993 (10th Cir. 1999)).

[13] *See* Doc. 155-11.

[14] Doc. 161-6.

[15] Doc. 193-3.

[16] *Lexos Media IP, LLC v. Nike, Inc.*, Case No. 22-311-JRG, Doc. 246, at 8 (E.D. Tex. Feb. 12, 2024) (acknowledging that Lexos's infringement expert "inadvertently included the claim construction chart from *Amazon* instead of *Nike*" but then testified at his deposition that his opinion was not affected by it "because each of the modified cursor images did in fact indicate where a user input could be received.").

fix Mr. Blok's mistake "under the guise of supplementation."[17]  And she characterized Lexos's "series of excuses" for the belated disclosure as "manufactured" and found that they amounted to bad faith.[18]  These facts demonstrate the prejudice to Overstock.  They also demonstrate Lexos's bad faith.

Most importantly, Lexos fails to demonstrate its ability to cure the prejudice associated with Overstock's efforts to informally address the problem, move for exclusion on the basis of the error, move for exclusion of the untimely declaration, and argue for summary judgment on the basis that Dr. Russ's opinion is either inadmissible or fails to support Lexos's infringement theory.  Overstock's dispositive motion is already fully briefed, so the Court declines to allow Lexos, yet again, to submit a change to its expert's report at this procedural juncture.  Overstock's own rebuttal expert has already rendered an opinion based on Dr. Russ's original report, and the Court is not inclined to reopen expert deadlines and depositions to accommodate this correction.

Thus, Overstock's motion to strike Dr. Russ's declaration is granted and Lexos's motion to supplement Dr. Russ's report with his declaration is denied.  The Court next proceeds to consider whether Dr. Russ's testimony based on his original and rebuttal reports must be excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[19]

### III.   Motion to Exclude Dr. Russ's Testimony

#### A.     Standard

Overstock moves to exclude Dr. Russ's testimony under Fed. R. Evid. 702 and *Daubert*. Rule 702 governs the admissibility of expert witness testimony by allowing someone "who is

---

[17] Doc. 156 at 20.

[18] *Id.* at 19.

[19] 509 U.S. 579 (1993).

qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion."[20]  The proponent of the expert's opinion must:

> [D]emonstrate[] to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[21]

In *Daubert*, the Supreme Court held that Rule 702 imposes a gatekeeping responsibility upon trial courts to ensure that proposed expert testimony "is not only relevant, but reliable."[22]

In performing this gatekeeping function, the court "generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[23]  This Court has "'wide discretion' in determining whether a witness's experience is sufficient to qualify him as an expert."[24]

If the expert is sufficiently qualified, the court must next determine whether the expert's testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline."[25] The Supreme Court in *Daubert* set forth a non-exhaustive list of four factors that courts may

---

[20] Fed. R. Evid. 702.

[21] *Id.*

[22] 509 U.S. at 589.

[23] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702).

[24] *Ronwin v. Bayer Corp.*, 332 F. App'x 508, 513 (10th Cir. 2009).

[25] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 592).

consider in determining the reliability of the proffered expert testimony: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; and (4) its degree of general acceptance in the relevant scientific community.[26]

Finally, the court must determine whether the expert testimony is sufficiently "relevant to the task at hand."[27]  Under Fed. R. Evid. 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."[28]  "Relevant expert testimony must 'logically advance[] a material aspect of the case' and be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'"[29]  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."[30]  In assessing whether expert testimony will assist the jury, the court should consider whether the testimony "is within the juror's common knowledge and experience."[31]

It is within the court's discretion to determine how to perform its gatekeeping function under *Daubert*.[32]  The most common method for fulfilling this function is a *Daubert* hearing, although it is not specifically mandated.[33]  Here, no party has requested a hearing on this motion.

---

[26] *Daubert*, 509 U.S. at 593–94.

[27] *Id.* at 597.

[28] Fed. R. Evid. 401; *see* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

[29] *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alteration in original) (first quoting *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005); and then quoting *Daubert*, 509 U.S. at 591).

[30] *Daubert*, 509 U.S. at 591 (quoting 3 Weinstein & Berger ¶ 702[02] (1988)).

[31] *Garcia*, 635 F.3d at 476–77 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006)).

[32] *Goebel v. Denv. & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[33] *Id.*

And the admissibility question turns on narrow issues of scope—whether Dr. Russ's opinion as set forth in his report is at odds with the Court's claim construction for "cursor image," and, if so, whether that requires exclusion. The Court finds that it can fulfill its gatekeeping obligation for this question based on the parties' submissions without a hearing.

**B.    Discussion**

Overstock does not challenge Dr. Russ's qualifications and the Court finds that he is qualified to opine on the technical issues in this case. Overstock moves to exclude on the basis of reliability and relevance because Dr. Russ's opinions are based on an incorrect claim construction for "cursor image" that contradicts the Court's claim construction. Lexos concedes that Dr. Russ did not consider the correct claim construction for "cursor image" in this case, but argues that this was an inadvertent "clerical mistake" that had no impact on his infringement opinion.

Several Federal Circuit decisions provide guidance on how to evaluate motions to exclude expert testimony based on incorrect claim constructions. In *Treehouse Avatar LLC v. Valve Corp.*, the Federal Circuit explained that where a district court "has adopted a construction that the parties requested and agreed upon, any expert theory that does not rely upon that agreed-upon construction is suspect."[34] The court found that the district court did not abuse its discretion in striking portions of a plaintiff's expert report where the defendant demonstrated that the expert's testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court."[35] Similarly, in *Trudell Med. Int'l Inc. v. D R*

---

[34] *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022).

[35] *Id.* (first citing *Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1357–58 (Fed. Cir. 2011); then citing *Frank's Casing Crew & Rental Tools Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1375 (Fed. Cir. 2002); and then citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006)).

*Burton Healthcare, LLC*, the court explained that when an expert's opinion is "untethered from the district court's claim constructions," the district court abuses its discretion by allowing the expert to testify at trial.[36]

In contrast, in *Barry v. DePuy Synthes Cos.*,[37] the Federal Circuit determined that a district court abused its discretion in excluding an expert's trial testimony on the basis that it was inconsistent with one of its claim constructions.  The court drew a distinction between expert testimony that *contradicts* the court's claim construction, and expert testimony that *applies* the correct claim construction but presents what it deemed "[a]t most . . . a dispute as to the credibility of [the expert's] repeated insistence that he did, in fact, apply the court's construction."[38]  The court concluded that the expert's trial testimony did not contradict the court's claim construction as it did in cases such as *Treehouse Avatar* and *Trudell*.[39]  Instead, the expert applied the correct claim construction in a way that the defendant argued was not credible.[40]  "And disputes over the application of the court's construction are fact disputes to be resolved by the factfinder, not evidentiary issues to be decided by the court in its role as gatekeeper."[41]  The court summarized its holding as follows:

> [T]he question of whether an expert's opinion contradicts the court's construction—and is, therefore, inadmissible—is squarely within the court's gatekeeping function.  In making that determination, a district court must not lose sight that "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness."  If, nonetheless, the court finds a genuine contradiction between the expert's opinion and the court's claim construction, the court must exclude the expert's opinion.  But

---

[36] 127 F.4th 1340, 1349–50 (Fed. Cir.), *cert. denied,* 146 S. Ct. 187 (2025).

[37] 164 F.4th 896, 903 (Fed. Cir. 2026).

[38] *Id.* at 908.

[39] *Id.* at 907–08.

[40] *Id.* at 905–07.

[41] *Id.* at 905.

contradiction does not mean mere tension, arguable inconsistency, or lack of persuasiveness.[42]

Thus, the Court must determine whether Dr. Russ's opinion is materially inconsistent with or genuinely contradicts the Court's claim construction for "cursor image," or instead whether the incorrect claim construction amounts to "mere tension, arguable inconsistency, or lack of persuasiveness."[43]  Overstock argues there is a genuine contradiction because Dr. Russ's opinion hinges on a plainly incorrect and incomplete recitation of the Court's claim construction for "cursor image."  Lexos responds that the omission was a clerical error and not a deliberate omission, that the omission is immaterial to Dr. Russ's infringement opinion, and that the second part of the "cursor image" construction does not require expert testimony.  The Court agrees with Overstock that Dr. Russ's opinion must be excluded.

As an initial matter, the Court does not find that Dr. Russ's inadvertence in applying the wrong claim construction bears on the question of admissibility.  It is undisputed that he applied the incorrect construction for "cursor image" in both his primary report and rebuttal report.  The only question is whether that claim construction is materially different from or contradicts the construction adopted by the Court.

Lexos suggests that Dr. Russ was aware of the *Nike* court's claim constructions, and that he was aware that the parties in this case had stipulated to using the claim constructions from the *Nike* case.  For this proposition, Lexos cites Dr. Russ's declaration and a list of materials Dr. Russ considered when composing his report.[44]  But the Court has stricken Dr. Russ's declaration, and his report belies the assertion that he considered the correct claim construction.  The report

---

[42] *Id.* at 909 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)) (citations omitted).

[43] *Id.*

[44] Doc. 216-2.

introduces the table of claim constructions he used to render his opinion by stating: "The Court's claim constructions stipulated by the parties that I applied are as follows."[45]  The table recites as "The Court's Construction" of "cursor image": "a movable image on a display screen whose position can be controlled through a user interface."[46]  This is not the Court's construction of that claim in this case.  And the laundry list of materials that Dr. Russ considered when preparing his opinion, which includes several of the *Nike* case's litigation documents, does not allow for an inference that Dr. Russ applied the correct claim construction for "cursor image" despite his explicit statements to the contrary.

Next, Lexos contends that the second part of the "cursor image" construction is not material to Dr. Russ's opinion; it is not essential to Dr. Russ's overall infringement opinion.  Overstock responds that the second part of the "cursor image" construction is not superfluous and points the Court to prior litigation that led to the addition of the second part of the claim construction.

Less than three months before the *Nike* claim construction order was entered, Lexos litigated the proper construction of "cursor image" for the same patents in *Lexos Media IP, LLC v. Amazon.com, Inc.*[47]   In *Amazon*, the court construed "cursor image" as "a movable image on a display screen whose position can be controlled through a user interface."[48]  In both cases, the parties disputed the meaning of "cursor image."  In both cases, Lexos proposed the following construction: "the appearance of the cursor on a user's screen before the cursor image is

---

[45] Doc. 174-2 ¶ 45.

[46] *Id.*

[47] *Amazon*, Nos. 22-CV-00169, 22-CV-00175, 22-CV-00273, 2023 WL 5723642, at *4 (E.D. Tex. Sept. 5, 2023).

[48] *Id.* at *7.

modified into the specific image."[49]  And in both cases, courts rejected Lexos's construction and adopted a version of the defendants' proposed construction.  Because this Court adopted the claim construction used in the *Nike* case, and because Dr. Russ used the claim construction from the *Amazon* case, the Court considers those courts' claim construction orders in determining the materiality of the difference in claim constructions between the two.

In the *Amazon* case, Lexos contested the defendants' proposed construction on the basis that a cursor image is not "moveable" and that, to the extent it is moveable, it may be moveable by a remote server and not solely by a user interface.[50]  At the claim construction hearing, the parties focused on this second issue: whether the cursor image had to be movable by only the user interface, and whether the defendants' alternative construction—that the image can be (rather than must be) controlled with a user interface—is a "totally meaningless limitation."[51]  The court disagreed with Lexos, finding that "cursors facilitate user control and input to a computer."[52]  Otherwise, "a cursor-like image moving around a display without the possibility of user input is just a pointer."[53]

In the *Nike* case, the parties again disputed the correct claim construction for "cursor image."  The defendants in *Nike* argued that the *Amazon* claim construction failed to "'explicitly distinguish between the claimed cursor image and other, unclaimed non-cursor images' with user-controllable positions.  'A cursor,' Defendants argue[d], 'moves with a pointing device to indicate the point where input can be received from the user interface.'"[54]  The defendants

---

[49] *Id.* at *5; *Nike* Order, at 9.

[50] *Amazon*, 2023 WL 5723642, at *5.

[51] *Id.*

[52] *Id.* at *6.

[53] *Id.*

[54] *Nike* Order, at 10.

provided the court with the example of "other displayed images or icons that can move with—but are different than—a cursor image," such as "the 'satellite image,' 'sprite,' and even the 'scroll bar' that are described in the patents."[55]

The *Nike* court agreed with the defendants and adopted a modified version of the defendants' proposed construction—the same construction the parties agreed to and the Court applied in this case—in order to make clear that "cursors facilitate user input to a computer."[56] In so ruling, the court pointed to the following language from the patents:

> Nearly all online computer interfaces utilize a wired or remote
> control positioning device such as a mouse or roller or track ball
> which controls the cursor's movement on the screen.  It is the
> cursor controlled by the mouse or positioning device which
> a user uses to "navigate" or move the cursor over objects, buttons,
> menus, scroll bars, etc., which appear on-screen and then clicking
> or in some cases doubleclicking in order to activate a screen or
> task, or to commence an application or some function.[57]

For the same reasons identified by the *Nike* court, this Court finds that the second part of the "cursor image" construction is neither superfluous nor immaterial.  It was adopted in *Nike*, instead of the *Amazon* construction, in order "to distinguish between the claimed cursor image and other, unclaimed noncursor images" with user-controllable positions.[58]  Therefore, under the Federal Circuit authority discussed above, Dr. Russ's application of the wrong claim construction for "cursor image" does not constitute "mere tension, arguable inconsistency, or lack of persuasiveness."[59]  Instead, Dr. Russ applied a claim construction that was "materially

---

[55] Doc. 200-3 at 21; *Nike* Order, at 10.

[56] *Nike* Order, at 10.

[57] *Id.* (quoting '102 Patent at 3:25–35).

[58] *Id.*

[59] *Barry v. DePuy Synthes Cos.*, 164 F.4th 895, 909 (Fed. Cir. 2026).

different from the construction adopted by the parties and the court."[60]  Under these

circumstances, the Court must exclude.

Finally, Lexos contends that because the parties do not dispute that "the modified cursor

image in each of the accused instrumentalities . . . includes a pointer that indicates where a user

input can be received," expert testimony is not needed to prove that this part of the

instrumentality was infringed.[61]  Instead, Lexos claims that "any reasonable juror has their own

experience of traditional cursor images and can see for themselves that the modified cursor

image in all cases includes an image that indicates where a user input can be received."[62]

Lexos's argument is misplaced for two main reasons.  First, whether or not the second

part of the claim construction is easily understood does not change the fact that Dr. Russ did not

apply the complete and correct claim construction in rendering his opinions.  As the Federal

Circuit has noted, this means his opinion is "suspect."[63]  Second, whether expert testimony is

needed to demonstrate infringement is a separate question that will be determined on summary

judgment.  On the only issue before the Court on this motion—the question of admissibility—the

Court finds that Dr. Russ's erroneous application of the Court's construction of "cursor image" is

fatal, and his opinion must be excluded.[64]

---

[60] *Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022); *see also Ultravision Techs., LLC v. GoVision LLC*, No. 218CV00100JRGRSP, 2021 WL 2144788 (E.D. Tex. May 26, 2021) ("Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion.").

[61] Doc. 216 at 7.

[62] *Id.*

[63] *Treehouse Avatar*, 54 F.4th at 714.

[64] To the extent Plaintiff argues that Dr. Russ's opinion should not be excluded on the basis of relevance, the Court disagrees.  "To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement *under the claim construction adopted by the court*, with all reasonable inferences drawn in favor of the non-movant." *Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (emphasis added).  As explained in its summary-judgment order, Dr. Russ's opinion

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Overstock's

*Daubert* Motion to Exclude the Testimony of Samuel Russ, Ph.D. (Doc. 174) is **granted**.

**IT IS SO ORDERED.**

<u>Dated: March 9, 2026</u>

<u>S/ Julie A. Robinson</u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

failed to apply the claim construction adopted by the Court, so his opinion does not provide a factual foundation upon which a jury could find infringement.