IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEXOS MEDIA IP, LLC,

     Plaintiff,

     v.

OVERSTOCK.COM, INC.,

     Defendant.

Case No. 22-2324-JAR

## MEMORANDUM AND ORDER

Plaintiff Lexos Media IP, LLC ("Lexos") brings this patent infringement action against Defendant Overstock.com, Inc. ("Overstock"), alleging it infringed three patents that relate to modifying the display of a cursor image on a website. This matter is before the Court on Overstock's Motion for Summary Judgment (Doc. 177) and *Daubert* Motion to Exclude the Testimony of Justin Blok (Doc. 175). The motions are fully briefed, and the Court is prepared to rule. For the reasons described below, the Court grants Overstock's motion for summary judgment on all three patent infringement claims. Because the Court need not consider Mr. Blok's damages opinion in ruling on summary judgment, the motion to exclude his testimony is moot.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. In applying this standard, a court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[1] "There is no genuine issue of material fact unless

---

[1] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[2] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[4]

The moving party must initially show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party may not simply rest upon its pleadings to satisfy this burden.[8] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] To accomplish this, the facts "must be

---

[2] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[3] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).

[4] *Thomas v. Metro. Life Ins.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[6] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[7] *Anderson*, 477 U.S. at 256.

[8] *Id.*

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (2000)).

identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[10]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[11]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[12]

## II.    Uncontroverted Facts

The following facts are uncontroverted, stipulated to, or viewed in the light most favorable to the nonmoving party.

### *The Patents and Claims*

Lexos is the intellectual property holding company of Lexos Media, Inc. and owns intellectual property associated with the business of that company.  On November 30, 1999, the United States Patent and Trademark Office issued United States Patent No. 5,995,102 ("the '102 Patent") entitled "Server system and method for modifying a cursor image."  On September 12, 2000, the United States Patent and Trademark Office issued United States Patent No. 6,118,449 ("the '449 Patent") entitled "Server system and method for modifying a cursor image."  On July 5, 2011, the United States Patent and Trademark Office issued United States Patent No. 7,975,241 ("the '241 Patent") entitled "System for replacing a cursor Image in connection with

---

[10] *Adams*, 233 F.3d at 1246 (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.3d 1022, 1024 (10th Cir. 1992)).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[12] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

displaying the contents of a web page." The '102 and '449 Patents both expired on June 25, 2017. The '241 Patent expired on September 20, 2020.

Lexos is the owner by assignment of all three patents ("the Asserted Patents") and owns all right, title, and interest in the Asserted Patents, including the right to sue for and recover all past, present, and future damages for infringement.

Lexos brought this action against Overstock on August 16, 2022, alleging infringement of the '102 and '449 Patents. Lexos asserted that Overstock literally and directly infringed Claim 72 of the '102 Patent. Claim 72 of the '102 Patent is an independent claim and recites:

> A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising:
> receiving a request at said at least one server to provide specified content information to said user terminal;
> providing said specified content information to said user terminal in response to said request, said specified content information including at least one cursor display instruction and at least one indication of cursor image data corresponding to a specific image; and
> transforming said initial cursor image displayed on said display of said user terminal into the shape and appearance of said specific image in response to said cursor display instruction, wherein said specified content information includes information that is to be displayed on said display of said user's terminal, wherein said specific image includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal, and wherein said cursor display instruction indicates a cursor display code operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image responsive to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal.[13]

---

[13] Doc. 23-1, '102 Patent at 24:9–36.

Lexos asserted that Overstock literally and directly infringed Claims 1, 38, and 53 of the '449 Patent. Claim 1 of the '449 Patent is an independent claim and recites:

> A server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal, said system comprising:
> cursor image data corresponding to said specific image; cursor display code, said cursor display code operable to modify said cursor image; and
> a first server computer for transmitting specified content information to said remote user terminal, said specified content information including at least one cursor display instruction indicating a location of said cursor image data, said cursor display instruction and said cursor display code operable to cause said user terminal to display a modified cursor image on said user's display in the shape and appearance of said specific image, wherein said specified content information is transmitted to said remote user terminal by said first server computer responsive to a request from said user terminal for said specified content information, and wherein said specified content information further comprises information to be displayed on said display of said user's terminal, said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal, and wherein said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image in response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal, and wherein said specific image relates to at least a portion of said information to be displayed on said display of said remote user's terminal.[14]

Claim 38 of the '449 Patent is a dependent claim and recites:

> The server system in accordance with claim 27, wherein said specified content information is transmitted in the form of HTML files that define a web page.[15]

---

[14] Doc. 23-2, '449 Patent at 18:39–19:6.

[15] *Id.* at 21:39–41.

Claim 53 of the '449 Patent is an independent claim and recites:

> A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising:
> receiving a request at said at least one server to provide specified content information to said user terminal;
> providing said specified content information to said user terminal in response to said request, said specified content information including at least one cursor display instruction and at least one indication of cursor image data corresponding to a specific image; and
> transforming said initial cursor image displayed on said display of said user terminal into the shape and appearance of said specific image in response to said cursor display instruction, wherein said specified content information includes information that is to be displayed on said display of said user's terminal, wherein said specific image includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal, and wherein said cursor display instruction indicates a cursor display code operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image in response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal, and wherein said specific image has a shape and appearance relating to said information to be displayed.[16]

The '102 and '449 Patents both claim priority to Application No. 08/882,580 ("the '580 Application"), filed on June 25, 1997.

Lexos filed the Amended Complaint on January 8, 2023,[17] adding a claim for infringement of the '241 Patent. The '241 Patent issued on July 5, 2011, from Application No. 11/040,190 ("the '190 Application"), filed on January 21, 2005. Lexos asserts that Overstock literally and directly infringes Claim 35 of the '241 Patent. Claim 35 of the '241 Patent is an independent claim and recites:

---

[16] *Id.* at 22:30–58.

[17] Doc. 23.

> A system for modifying a cursor image, comprising:
> at least one client computer receiving content information
> from at least one server computer, said content information
> including at least one cursor display instruction specifying an
> appearance of a visual image,
> following receipt of the content information, the at least one client
> computer processing the at least one cursor display instruction and
> modifying the cursor image to include the visual image and
> displaying the modified cursor image,
> wherein the visual image includes promotional material, and the
> visual image tracks a movement of the modified cursor image.[18]

### '241 Patent Priority Facts

The '241 Patent does not claim priority to the '102 Patent (or any earlier application) on its face. Nor does the '241 Patent claim priority to the '102 Patent (or any earlier application) on its Application Data Sheet because no Application Data Sheet was ever filed. The '241 Patent also does not recite a priority claim in the specification or in an Information Disclosure Statement ("IDS").

In May 2022, Lexos petitioned the United States Patent and Trademark Office ("USPTO") for permission to add the missing priority claim and to pay the delinquent 7.5-year maintenance fee for the '241 Patent. The USPTO initially issued a Certificate of Correction on July 12, 2022, adding the missing priority claim to the '241 Patent, but vacated it on January 31, 2023, because "the certificate issued without requesting proper approval."[19] Lexos petitioned the USPTO twice more to correct its priority claim, but the USPTO dismissed it both times. Lexos did not appeal.

In separate litigation in the United States District Court for the Northern District of California, Lexos asserted the '241 Patent against eBay, Inc., in *Lexos Media IP, LLC v. eBay*

---

[18] Doc. 23-3, '241 Patent at 20:61–21:6.

[19] Doc. 177-6 (Ex. 6).

*Inc.*, Case No. 3:23-cv-06314. eBay moved to dismiss the '241 Patent because it did not properly claim priority under 35 U.S.C. § 120, rendering it invalid in view of the earlier '102 Patent. District Judge Rita F. Lin granted eBay's motion to dismiss the '241 Patent on March 22, 2024, finding that it did not have a priority claim over its own prior art and was therefore invalid ("*eBay* Order").[20] Specifically, the court rejected Lexos's argument that the '190 application properly claimed priority to the '102 Patent.[21]

Lexos appealed the *eBay* Order and, on May 22, 2024, a docketing notice was filed with the Federal Circuit. On July 8, 2024, while the appeal was pending, Lexos entered into a licensing agreement with RPX Corporation ("RPX"). The agreement provided RPX's 267 Covenantees, including eBay, with a patent covenant from Lexos. On July 16, 2024, eBay entered into a settlement agreement with Lexos in the *eBay* case. And the next day, Lexos filed an unopposed motion to vacate with the Federal Circuit, seeking vacatur of the district court's order dismissing the '241 Patent claim or, in the alternative, remand to the district court to consider the request to vacate. As part of the settlement agreement, eBay agreed not to oppose the motion to vacate.

On September 11, 2024, the Federal Circuit remanded the case to the district court and took "no position as to whether the district court should grant vacatur."[22] On remand, Lexos incorporated by reference its brief in the Federal Circuit arguing "exceptional circumstances" warranted vacatur because the RPX agreement was "far from . . . voluntary" and the district court's invalidation order was of no precedential value.[23] The district court denied Lexos's

---

[20] *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1053 (N.D. Cal. 2024).

[21] *Id.* at 1051–53.

[22] Doc. 177-13 (Ex. 13 at 2).

[23] Doc. 177-14 (Ex. 14 ¶ 5); Doc. 177-32 (Ex. 32).

motion to vacate on the grounds that (1) Lexos failed to show that vacatur was appropriate and (2) the equitable balancing test favored denial.

### *Infringement Contentions*

The Asserted Patents teach methods for modifying a computer's "cursor image" into a "specific image" representative of a product as a means of advertisement.[24]  They each state that the "cursor image" is modified to provide "a simple means to deliver advertising elements . . . without the annoyance of totally interrupting and intrusive content delivery."[25]

Lexos contends that the "hover zoom" functionality on Overstock's website infringes the Asserted Patents.  To illustrate, Lexos provided Figures 1, 2, and 3 in the Amended Complaint as examples of Overstock's infringing technology:



Figure 1[26]

---

[24] Doc. 23-1, '102 Patent at 2:45–46; Doc. 23-2, '449 Patent at 2:47–49; Doc. 23-3, '241 Patent at 2:42–45.

[25] *See* Doc. 23-1, '102 Patent at 2:28–32; Doc. 23-2, '449 Patent at 2:30–33; Doc. 23-3, '241 Patent at 2:29–32.

[26] Doc. 23 ¶ 28.



Figure 2[27]



Figure 3[28]

Lexos designated Samuel Russ, Ph.D., as its technical expert in this case.  Dr. Russ opines in part:

---

[27] *Id.* ¶ 30.

[28] *Id.* ¶ 35.

> Overstock, in general, modifies a cursor when the cursor is moved over an image of a product. The initial cursor is modified into a cursor image in the shape and appearance of a specific image that comprises (1) a clear box; (2) with a pointing-hand cursor image in the layer above the clear box; (3) a portion of the image of the product in the layer beneath it that is highlighted by the clear box that is the subject of the displayed web page; and (4) a zoom image that corresponds to the highlighted portion of the product image.[29]

In other words, Lexos claims that both the "zoom lens" (the shaded transparent box) and the "zoom image" (the corresponding larger image of the product on the right side of the screen) together are the "modified cursor image" in the shape and appearance of a "specific image" in the Asserted Claims.

In his opening report that was disclosed on December 31, 2024, Dr. Russ listed the claim constructions that he applied in rendering this opinion. He recited the incorrect claim construction for "cursor image" that was adopted by the Court in this case.[30] The mistake was also included in his rebuttal report.[31] In a separate Memorandum and Order issued today, the Court excluded Dr. Russ's infringement testimony because it is not based on the Court's claim construction, and the Court struck Dr. Russ's untimely declaration, which stated that his infringement opinion was not impacted by the error.

## III.     Discussion

### A.     Validity of the '241 Patent

Defendant first argues that Plaintiff's enforcement of the '241 Patent is barred by the doctrine of collateral estoppel, otherwise known as issue preclusion, because the *eBay* Order held that the '241 Patent is invalid. Collateral estoppel protects litigants from the burden of

---

[29] Doc. 174-2 ¶ 117 (citation omitted).

[30] Doc. 174-2 ¶ 45.

[31] Doc. 174-3 ¶ 108.

relitigating the same issue with the same party and promotes judicial economy by preventing

needless litigation.[32]  In a patent case, a court's collateral estoppel determination is generally

governed by the law of the regional circuit.[33]  Thus, under the applicable Tenth Circuit standard,

the party invoking the doctrine of collateral estoppel has the burden to establish the following

elements:

> (1) the issue previously decided is identical with the one presented
> in the action in question, (2) the prior action has been finally
> adjudicated on the merits, (3) the party against whom the doctrine
> is invoked was a party or in privity with a party to the prior
> adjudication, and (4) the party against whom the doctrine is raised
> had a full and fair opportunity to litigate the issue in the prior
> action.[34]

However, Federal Circuit precedent applies to any aspects of the collateral estoppel analysis

involving substantive issues of patent law.[35]  Importantly, the Supreme Court has held that

collateral estoppel may apply where a party "fac[es] a charge of infringement of a patent that has

once been declared invalid."[36]

Overstock argues that all of the collateral estoppel elements are met here—the issue of

the '241 Patent's invalidity on the basis of priority is identical to the issue litigated in the *eBay*

case, the validity of the patent was finally adjudicated on the merits, the party against whom the

doctrine is invoked (Lexos) is the same party in this case, and Lexos had a full and fair

opportunity to litigate in the *eBay* case.  Relevant to the collateral estoppel elements, Lexos

responds that the *eBay* case did not address the '241 Patent's validity, and that it did not have a

---

[32] *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

[33] *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

[34] *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (emphasis omitted) (quoting *Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 975 F.2d 683, 687 (10th Cir. 1992)).

[35] *See Ohio Willow Wood*, 735 F.3d at 1342.

[36] *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349–50 (1971).

full and fair opportunity to litigate that issue.  Moreover, Lexos urges the Court to exercise its

discretion and decline to apply collateral estoppel because the issue involved is novel and

valuable to litigate, applying collateral estoppel here would be unfair, and the purpose of

collateral estoppel is not met in this case.  The Court first addresses the elements of collateral

estoppel and then considers the equitable arguments raised by Lexos.

### 1.    Same Issue

The Court finds that Overstock has met its burden of establishing that the issue before

Judge Lin in *eBay* is identical to the issue presented in this case: the validity of the '241 Patent,

which turns on whether it claimed priority over the '102 Patent—"a purely legal question."[37]  As

Judge Lin explained, and Lexos does not dispute, "the validity of the '241 [P]atent hinges on

whether the corresponding '190 application claims priority to Lexos's first-filed application."[38]

The court applied 35 U.S.C. § 120, the statute the parties agree controls the issue of priority here,

and the USPTO's regulation implementing the statute, 27 C.F.R. § 1.78.[39]  The court also

considered the Manual of Patent Examining Procedure ("MPEP") and its guidance to applicants

about § 1.78, as well as the Federal Circuit's decision in *Droplets, Inc. v. E\*Trade Bank* that

adopted and approved the MPEP's guidance on this issue.[40]  In applying this law, the court

concluded:

> The '190 application does not include a specific reference to the
> prior-filed applications as required under Section 120, because it
> fails to identify the familial relationships of each earlier-filed
> application.  As such, it "fails to enumerate a priority claim

---

[37] *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1048 (N.D. Cal. 2024).

[38] *Id.* at 1049.

[39] *Id.* at 1049–50.

[40] *Id.* at 1051 (quoting *Droplets, Inc. v. E\*TRADE Bank*, 887 F.3d 1315–16 (Fed. Cir. 2018)).

> sufficient to avoid [Lexos's] own fully-invalidating prior art[.]"
> The '241 patent is invalid.[41]

Lexos appears to dispute whether the issue previously decided in the *eBay* case is identical to the one presented here. But its position is not a model of clarity. On the one hand, Lexos claims that the "issue is not about the validity of the '241 Patent; it is about substantive patent law on properly claiming priority."[42] On the other hand, Lexos concedes that "if the '241 Patent failed to claim priority to the '102 Patent, . . . the '241 Patent is invalid."[43] Lexos characterizes the issue as a "procedural USPTO argument" that only "tangentially affect[s] the validity of the '241 Patent."[44]

Given the explicit ruling by Judge Lin that the '241 Patent is invalid, the Court finds that the issue presented in that case is identical to the one presented here. Lexos seeks to enforce the same patent in this case against Overstock, a patent that another court has determined is invalid based on its failure to claim priority over Lexos's '102 Patent. Lexos's recharacterization of the issue as technical and procedural is contradicted by the plain language of Judge Lin's ruling.

### 2.    Final Adjudication on the Merits

Overstock has demonstrated that there was a final judgment on the merits of the '241 Patent's validity. After granting eBay's motion to dismiss the '241 Patent claim, Lexos appealed Judge Lin's order that deemed the patent invalid, and while that appeal was pending, the parties settled. The Federal Circuit remanded the case but "took no position" on the parties' joint request to vacate the district court's Order.[45] On remand, the district court denied the motion to

---

[41] *Id.* at 1053 (alterations in original) (quoting *Droplets, Inc.*, 887 F.3d at 1317).

[42] Doc. 193 at 7 (emphasis omitted).

[43] *Id.*

[44] *Id.*

[45] *Lexos Media IP, LLC v. eBay Inc.*, No. 2024-1852, 2024 WL 4140191, at *1 (Fed. Cir. Sept. 11, 2024).

vacate the Court's judgment entered based on its Order declaring the patent invalid.[46]  Thus, the district court's decision granting eBay's motion to dismiss the '241 Patent infringement claim was a final adjudication on the merits.[47]

### 3.    Same Party

There is no dispute that Lexos is the patentee-plaintiff in both actions.  Overstock has established this element.

### 4.    Full and Fair Opportunity to Litigate

Overstock argues that Lexos had a full and fair opportunity to litigate validity based on the '241 Patent's priority issue in the *eBay* case, pointing to the district court's decision rendered after a hearing on the motion, and Lexos's opportunity to appeal that decision, which it decided to forgo as part of the parties' settlement.  Lexos disputes that it had a full and fair opportunity to litigate the patent's validity.

Under Tenth Circuit law, "[a] 'full and fair opportunity' to litigate the issue includes: (1) 'that the parties were fully heard,' (2) 'that the court supported its decision with a reasoned opinion,' and (3) 'that the decision was subject to appeal or was in fact reviewed on appeal.'"[48]  In the patent context, the Supreme Court held in *Blonder-Tongue* that the patentee "must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally,

---

[46] Doc. 177-15 (Ex. 15).  At different points in its brief, Lexos suggests that because the *eBay* Order was decided by a district judge and lacks precedential value, it should not be considered binding in this case.  Lexos confuses precedent with finality.  It cites no authority for the proposition that a final decision rendered in a district court is any less final for purposes of collateral estoppel than an appellate decision.  For the purposes of collateral estoppel, the district court's decision was a final decision on the merits.

[47] *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) ("Dismissals for failure to state a claim are presumptively with prejudice because they fully dispose of the case.").

[48] *United States v. Arterbury*, 961 F.3d 1095, 1103 (10th Cir. 2020) (quoting *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265 (2d Cir. 1975)).

substantively and evidentially to pursue his claim the first time.'"[49]  The Court emphasized that this inquiry is "not a simple matter."[50]  In addition to any case-specific factors that may be relevant, the Court should consider whether the patentee was the plaintiff and chose the first forum and whether the plaintiff had an incentive to litigate the issue in the first case.[51]  Applying these factors here, the Court finds that Lexos had a full and fair opportunity to litigate.

As for the Tenth Circuit factors, Lexos's priority arguments were fully heard in the *eBay* case by Judge Lin.  Judge Lin issued her decision on eBay's motion to dismiss after briefing and oral argument.[52]  Judge Lin supported her decision with a reasoned written opinion.  That decision was subject to appeal, and in fact was appealed.  The appeal was dismissed on Lexos's own motion.  Under these factors, Lexos had a full and fair opportunity to be heard on the issue of the '241 Patent's priority, which dictates its validity.

As for the *Blonder-Tongue* factors, Lexos was the plaintiff in the *eBay* case and opted to litigate that case in that forum.  "[T]he issue of incentive to litigate arises where '[t]he stakes in the first action may be so small that extensive effort is not reasonable if the risk is limited to the first action.'"[53]  While the stakes in the *eBay* case may have been small in comparison to the 267 potential defendants with whom Lexos licensed through RPX, there is no evidence in the record to suggest that the amount in controversy in that case was so small that pursuing the appeal was

---

[49] *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971) (quoting *Eisel v. Columbia Packing Co.*, 181 F. Supp. 298, 031 (Mass. 1960)).

[50] *Id.* at 333.

[51] *Id.* at 332–33.

[52] *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1045 (N.D. Cal. 2024).

[53] *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1316 (Fed. Cir. 2015) (quoting 18 Wright & Miller's Federal Practice & Procedure § 4423 (2d ed. 2002)).

not worth Lexos's time and effort.  Indeed, it was worth Lexos's time to litigate the issue before the district court and appeal the district court's decision.

Lexos also maintains that, due to the parties' settlement during the appeal, it was "foreclosed from having the Federal Circuit—who needs to hear this issue in order to have binding precedent on this issue—substantively review the district court's ruling."[54]  Lexos suggests that because the licensing agreement it negotiated with RPX involved so many parties, settlement of the *eBay* case was "mandatory" in the sense that declining to include it "could have blown up settlement with 267 potential defendants," which would have been unreasonable.[55]

Lexos's claim in its brief that its hands were tied in terms of appealing Judge Lin's order on the invalidity of the '241 Patent is not persuasive to the Court.  Lexos entered into a voluntary settlement agreement in the *eBay* case while its appeal was pending.  It was not required to do so. And as Judge Lin noted in denying Lexos's motion to vacate her decision, the fact that the settlement was negotiated with many parties "alone does not show that preventing appellate review of [the] adverse judgment [in the *eBay* Case] was not a motivating factor in Lexos's decision to settle."[56]  Nor does Lexos's voluntary settlement in the *eBay* case demonstrate it did not have a full and fair opportunity to litigate the priority issue.

All of Lexos's other arguments that it did not have a full and fair opportunity to litigate go to the substance of the *eBay* Order.  But "disagreement is not enough to establish that . . . [Lexos] did not have a full and fair opportunity to litigate the validity of its patent."[57]  In sum,

---

[54] Doc. 193 at 10.

[55] *Id.* (emphasis omitted).

[56] Doc. 177-15 (Ex. 15 at 2).

[57] *Miss. Chem. Corp. v. Swift Agr. Chems. Corp.*, 717 F.2d 1374, 1377 (Fed. Cir. 1983); *see also Sullivan v. DaVita Healthcare Partners, Inc.*, 780 F. App'x 612, 616–17 (10th Cir. 2019) ("Disagreement with the decision in the prior proceeding does not mean a party was denied a full and fair opportunity to litigate.").  To the extent Lexos argues that because the issue decided in *eBay* was novel, it somehow impacts whether it had a full and fair

the Court finds that Overstock has met its burden of demonstrating that the collateral estoppel elements are met.

### 3.    Discretionary Considerations

Lexos's remaining arguments hinge on its contention that the Court has broad discretion not to apply collateral estoppel for policy-based reasons or under a "balance of equities" analysis even when the collateral estoppel elements are met.  But its cited authority does not support this contention.  For example, Lexos relies on *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*[58]  In that case, the Tenth Circuit explained that "the decision to apply *offensive* collateral estoppel lies within the court's 'broad discretion.'"[59]  Offensive collateral estoppel is when "a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff."[60]  It is "treated differently" than defensive collateral estoppel—where "a plaintiff was estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant."[61]  The Supreme Court has explained that in the case of offensive collateral estoppel, trial courts have "broad discretion to determine when it should be applied."[62]  In contrast, in the defensive collateral estoppel context, such as in *Blonder-Tongue*, the full-and-fair-opportunity-to-litigate element of the collateral-estoppel defense safeguards against "the important concerns about the complexity of patent litigation and

---

opportunity to litigate, the Court disagrees.  In *Blonder-Tongue*, the Court indicated that where nonobviousness is at issue, and "the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit," that would be a relevant factor to consider when determining whether the patentee had a full and fair opportunity to litigate.  402 U.S. 313, 333 (1971).  There is no indication here that Judge Lin's decision failed to grasp the technical subject matter at issue.

[58] 725 F.3d 1213 (10th Cir. 2013).

[59] *Id.* (emphasis added) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

[60] *Parklane Hosiery*, 439 U.S. at 329.

[61] *Id.*

[62] *Id.* at 331.

the posited hazard that the prior proceedings were seriously defective."[63]  In this case, Overstock seeks to apply defensive collateral estoppel, thus, the Court does not have the same broad discretion that the Tenth Circuit applied in the *XTO Energy* case.  As already discussed, the Court has found that all of the collateral-estoppel elements are met, including that Lexos had a full and fair opportunity to litigate in the prior proceeding, so the Court must apply collateral estoppel.

Lexos also cites *In re Cygnus Telecommunications Technology, LLC Patent Litigation* to support its argument that district courts can decline to apply collateral estoppel based on policy considerations.[64]  But the issue in *Cygnus* was whether collateral estoppel applies in a different setting than in *Blonder-Tongue* and *Mississippi Chemical Corp.*—where "a court enters a judgment of patent invalidity against a patentee in a multi-defendant action, and the patentee appeals that judgment against fewer than all of the defendants," seeking to "invoke[] collateral estoppel based on the final judgment in favor of the defendant as to whom the patentee did not appeal."[65]  The court determined that the *Blonder-Tongue* collateral-estoppel principle did not apply in that situation because a "patentee's decision not to appeal against one defendant will mean that the patentee loses its right to an appellate decision on the merits against all of them," and the defendants cited no authority for applying collateral estoppel under those circumstances.[66]

---

[63] *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971); *see also Miss. Chem. Corp. v. Swift Agr. Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983) ("[U]nder *Blonder-Tongue*, the only inquiry open to the district judge is whether the patentee had a full and fair opportunity to litigate the validity of the patent in the prior case in which it was held invalid. . . .  The judge cannot permit relitigation because of equitable considerations.") .

[64] 536 F.3d 1343 (Fed. Cir. 2008).

[65] *Id.* at 1349.  In *Cygnus*, the court was considering multiple defendants in multi-district litigation, which it explained was "most logically viewed as a single, multi-defendant lawsuit."  *Id.*

[66] *Id.*

As part of this ruling, the Federal Circuit explained that "strong policy reasons" support not extending collateral estopped to this multi-defendant context.[67]  But the *Cygnus* court did not hold that courts may decline to apply collateral estoppel based on policy when it otherwise applies to a single action.  In fact, the court explicitly distinguished its facts from cases such as this one:

> We recognize that the result would be different if the various actions had not been consolidated in an MDL proceeding and one of the actions had gone to judgment before the others, resulting in a judgment adverse to the plaintiff.  In that setting, absent special circumstances, the plaintiff's failure to appeal the first judgment could result in the application of collateral estoppel against it in each of the other cases.  However, that is not the case before us.  Because the consolidated MDL proceeding was treated as a single multi-defendant action with respect to the common issues, we think it proper to treat it as a single action for purposes of the collateral estoppel analysis as well.[68]

Thus, *Cygnus* does not stand for the proposition stated by Lexos, that "the Federal Circuit has confirmed that it will consider whether 'there are strong policy reasons for not applying collateral estoppel.'"[69]

Because this case falls squarely within the context of defensive collateral estoppel and the Supreme Court's guidance on collateral estoppel in *Blonder-Tongue*, the Court does not have broad discretion to decline to apply it based on policy or by balancing equities, as urged by Lexos.  Thus, the Court need not address Lexos's many arguments grounded in policy and fairness, which, when boiled down to their essence, assert that the *eBay* decision was wrongly decided on the merits.  Because Overstock has established all of the collateral estoppel elements, Lexos is precluded from relitigating the issue of the '241 Patent's validity on the basis that it did

---

[67] *Id.* at 1350.

[68] *Id.* at 1350 n.1 (citation omitted).

[69] Doc. 193 at 7 (quoting *Cygnus*, 717 F.2d at 1350).

not establish priority over the '102 Patent.  Therefore, Overstock's motion for summary judgment on that claim (Count III) is granted.

### B.    Direct Infringement of the '102 and '449 Patents

Lexos alleges Overstock directly and literally infringed Claim 72 of the '102 Patent and Claims 1, 38, and 53 of the '449 Patent under 35 U.S.C. § 271(a).  Overstock moves for summary judgment of noninfringment on these patent claims.  To find direct patent infringement, the Court must: (1) "interpret the claims to determine their scope and meaning," and (2) "compare the properly construed claims to the allegedly infringing device."[70]  The first question is one of law,[71] and the Court has already construed the patent claims in this case after conducting a *Markman* hearing.[72]  The second inquiry is one of fact,[73] and is at issue on this summary judgment motion.  "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system."[74]  Thus, "[t]o support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee."[75]  Overstock moves for summary judgment because (1) Dr. Russ's expert testimony is inadmissible, leaving no evidence of infringement; (2) Lexos's infringement theory is inconsistent with the Court's claim construction; and (3) Lexos cannot recover damages because it failed to mark or allege pre-suit

---

[70] *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004).

[71] *Id.*

[72] Doc. 99.

[73] *Dynacore*, 363 F.3d at 1273.

[74] *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).

[75] *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

knowledge.  As discussed below, because the Court finds that summary judgment in favor of

Overstock is warranted on the first two grounds, it need not reach the damages issue.

### 1.    Dr. Russ's Expert Testimony

Overstock argues that without Dr. Russ's expert testimony,[76] Lexos cannot demonstrate

that Overstock infringed.  Lexos responds that an "expert opinion is not required for Lexos to

present factual evidence of a cursor image, because a lay jury can see for itself that the modified

cursor includes an image that meets the requirements for a cursor image."[77]

To be sure, there is no "per se rule that expert testimony is required to prove infringement

when the art is complex."[78]  But where, as here, the "case involve[es] complex technology,

where the accused infringer offers expert testimony negating infringement, the patentee cannot

satisfy its burden of proof by relying only on testimony from those who are admittedly not expert

in the field."[79]  And even if Lexos could meet its burden with non-expert testimony, it wholly

fails to identify such evidence.  Instead, Lexos discusses the claim specification and argues that a

jury could find infringement on the correct claim construction.  But attorney argument is not

---

[76] In a separate order, this Court strikes Dr. Russ's untimely declaration because it is not a permissible supplement under Rule 26(e), and Lexos's failure to timely disclose his updated opinion was not substantially justified or harmless.

[77] Doc. 193 at 25.

[78] *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004).

[79] *Id.*

evidence.[80]  And importantly, "[w]hen the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."[81]

Moreover, even if the Court had not excluded Dr. Russ's testimony, it would not suffice to create a genuine issue of material fact on infringement.  "To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement *under the claim construction adopted by the court*, with all reasonable inferences drawn in favor of the non-movant."[82]  Dr. Russ's opinion failed to apply the claim construction adopted by the Court, so his opinion does not provide a factual foundation upon which a jury could find infringement.

As discussed in this Court's *Daubert* ruling, Dr. Russ's failure to consider the correct claim construction of "cursor image" is not immaterial, and the second part of the claim construction is not superfluous.  Recall that the stipulated claim construction here was disputed in the *Nike* case.  And the defendants in *Nike* argued that the claim construction for "cursor image" in the *Amazon* case, which preceded the *Nike* court's order by less than three months, failed to "'explicitly distinguish between the claimed cursor image and other, unclaimed non-cursor images' with user-controllable positions.  'A cursor,' Defendants argue[d], 'moves with a

---

[80] *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1312 (Fed. Cir. 2014) ("[A]ttorney argument, alone, may not create a material question of fact regarding technical evidence."); *Invitrogen Corp. v. Clontech Lab'ies, Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."); *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[T]he party opposing the motion for summary judgment of noninfringment must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant.  Mere denials or conclusory statements are insufficient.").

[81] *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

[82] *Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (emphasis added).

pointing device to indicate the point where input can be received from the user interface.'"[83]  The defendants provided the court with the example of "other displayed images or icons that can move with—but are different than—a cursor image," such as "the 'satellite image,' 'sprite,' and even the 'scroll bar' that are described in the patents."[84]  That distinction is what prompted the court in *Nike* to agree with the defendants and adopt a modified version of the defendants' proposed construction, in order to make clear that "cursors facilitate user input to a computer."[85]

In sum, the Court finds that Dr. Russ's opinion based on a different claim construction—one that does not make clear that the cursor facilitates user input to a computer—does not create a genuine issue of material fact on infringement "under the claim construction adopted by the court."[86]

### 2.    Lexos's Infringement Theory

Assuming, *arguendo*, that Dr. Russ's expert testimony was admissible, Overstock argues that summary judgment is still warranted because Lexos's infringement theory, as opined by Dr. Russ, conflicts with the Court's claim construction.  Specifically, Overstock argues that the four-part infringement theory in Dr. Russ's report is incompatible with the Court's construction of "cursor image" because no image under Lexos's approach satisfies both parts of the "cursor image" construction—no image is both moveable *and* indicates where user input can be received.  Instead, the offset zoom image satisfies the "moveable" component of the construction, while the actual cursor and shaded box satisfies the "user input" component of the construction.  Lexos responds that the patent language and "Federal Circuit law" permit the

---

[83] *Nike* Order at 10.

[84] Doc. 200-3 at 21.

[85] Doc. 177-19 (*Nike* Claim Construction Order, at 10).

[86] *Intell. Sci. & Tech., Inc.*, 589 F.3d at 1183.

modified cursor image to have multiple components, and that the cursor image need not be exclusively or entirely replaced by the specific image.

The Court agrees with Overstock that Lexos's infringement theory contradicts the Court's claim construction for "cursor image," which is "a movable image on a display screen whose position can be controlled through a user interface *and* that indicates where user input can be received."[87] As an initial matter, Lexos fails to cite the Court to any Federal Circuit law that supports its argument.  The only law it cites on this point has been stricken.[88]  And Lexos's citations to the patent language do not salvage its infringement theory.  The problem is that these are arguments about the scope of claim construction that attempt to relitigate and interpret the meaning of "cursor image," which the Court has already construed as a matter of law as part of its Claim Construction Order.[89]  It is for the Court, and not the jury, to determine the scope of the patent's claims.[90]

Under this Court's claim construction, "cursor image" is drafted in the singular tense and makes clear that the moveable image (singular) has a position that can be controlled through a user interface and indicates where user input can be received.  As Overstock points out, this construction does not allow different images to fulfill each prong of the Court's construction. Overstock's citation to *In re Varma* is instructive:

> [W]hile "a" sometimes is non-restrictive as to number, permitting
> the presence of more than one of the objects following that
> indefinite article, context matters even as to whether the word has

---

[87] Doc. 99 at 6, Doc. 92-1 at 8.

[88] *See* Doc. 218 (striking Doc. 193 at 38–39 as a sanction for using hallucinated citations generated by generative artificial intelligence).

[89] *See Egenera, Inc. v. Cisco Sys., Inc.*, 141 F.4th 1350, 1361–62 (Fed. Cir. 2025).

[90] *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019) ("It is beyond dispute that claim construction issues are to be decided by the court."); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

> that meaning.  And here the question is not whether there can be more than one request in a claim-covered system: there can.  Rather, the question is whether "a" can serve to negate what is required by the language following "a": a "request" (a singular term) that "correspond[s]" to "two or more selected investments."  It cannot.  For a dog owner to have "a dog that rolls over and fetches sticks," it does not suffice that he have two dogs, each able to perform just one of the tasks.[91]

Similarly, here, "a" cursor image (a singular term) is "a movable image on a display screen (a singular term)."  The language that follows modifies "a movable image on a display screen."  That moveable image's "position can be controlled through a user interface and . . . indicates where user input can be received."  In contrast, under Lexos's infringement theory, two separate images would satisfy the term "cursor image": one that receives user input but is unmodified, and another that is modified but cannot receive user input.

Lexos argues that the patent's language contemplates that a cursor image may include multiple components.  For example, Lexos relies on the following specification language in the '102 Patent that provides examples of the embodiment to support its contention that the modified cursor image may include multiple images:

> Alternatively, Fizzy Cola, on its own site, or homepage, might have a picture of a bottle of Fizzy in the middle of the page (in the display data).  A dynamic cursor image could then be used to show a person holding a straw in such a way that the straw always points from the user toward the top of the Fizzy bottle, no matter where the cursor moves on the screen.  The straw, in this case, might be "attached" to the cursor image (part of the same image) or could be separate, "satellite" image, a "sprite," whose movement on the screen (in this case) is related to the  movement of the cursor.  Sprites, which can appear and disappear as desired, can enhance the invention by enabling the use of graphical elements which are associated with the cursor but which reside outside the limited cursor "space" (which in some systems may be, at maximum, 32 by 32 pixels).  For the purposes of the invention, however, there should be no limitation to the size of the cursor.

---

[91] *In re Varma*, 816 F.3d 1352, 1362–63 (Fed. Cir. 2016) (citation omitted).

. . . .

> Use of associated sound, sprites, animations, and modified system display elements are provided as enhancements to the basic invention. For example, a Fizzy cola mascot could appear in the cursor space in conjunction with the speakers, attached to the user's machine, playing the sound of the mascot saying, "drink Fizzy!" Any time a content provider elects to incorporate said enhancements in conjunction with a new modified cursor image, the cursor image and said enhancements have been deemed related.[92]

The Court disagrees with Lexos's interpretation of "cursor image" based on this language. It explicitly designates associated sounds, sprites, animations, and modified system display elements as "enhancements to the basic invention." And the "enhancements" are referenced separately from the "cursor image," stating that they are "related to" the cursor image.

Lexos contends that the *Nike* claim construction order, from which the stipulated "cursor image" claim construction in this case originated, did not rule that cursor image "excluded the modified cursor including multiple images, including a separate satellite image, as per the specification."[93] But that is not how this Court reads the *Nike* Order, as already discussed above. The basis for the defendants' proposed claim construction in the *Nike* case was to "explicitly distinguish between the claimed cursor image and other, unclaimed non-cursor images' with user-controllable positions."[94] That court agreed with the defendants' position,[95] and the quoted language from the patent is not inconsistent with this ruling.

Finally, the Court notes that its ruling is consistent with the *Amazon* court's summary judgment ruling, which applied the first part of the "cursor image" construction the Court

---

[92] Doc. 23-1, '102 Patent at 17:15–31, 17:62–18:3).

[93] Doc. 193 at 36.

[94] *Nike* Order at 10.

[95] *Id.*

27

adopted here.[96]  In that case, the defendants argued, and the court agreed, that Lexos's

infringement position violated the court's claim constructions.[97]  The *Amazon* court discussed the

"moveable" characteristic of the "cursor image" as it related to Lexos's theory of infringement:

"These portions of the non-moving product image cannot form part of the 'modified cursor

image' because that modified cursor image (including that image's shape and appearance) **must**

be movable under this Court's construction."[98]  And the Court rejected the multi-component

theory Lexos promotes in this case.[99]  Like the court in *Amazon*, this Court finds that under its

claim construction, the cursor image must be moveable, and the product's zoom image is not.

Thus, even if the cursor image could be comprised of multiple components, one of those

components is not moveable and, thus, violates the first part of the Court's claim construction.

In short, Lexos's claim construction arguments are foreclosed at this stage because the

Court's construction of "cursor image" is not compatible with Lexos's four-part theory of patent

infringement.  Therefore, even if the Court found that Lexos brought forward admissible

evidence of infringement, its four-part theory of infringement in the Russ Report conflicts with

the Court's claim construction of "cursor image."  For this additional reason, summary judgment

in favor of Overstock is warranted on Lexos's remaining patent infringement claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Overstock's Motion for

Summary Judgment (Doc. 177) is **granted**.  Overstock's *Daubert* Motion to Exclude the

---

[96] *Lexos Media IP, LLC v. Amazon.com, Inc.*, Nos. 22-CV-00169, 22-CV-00175, 22-CV-00273, 2023 WL 9503461 (E.D. Tex. Dec. 13, 2023).

[97] *Id.* at *4.

[98] *Id.* at *6.

[99] *Id.* ("Just as the whole modified cursor image must be movable, so too must its constituent components.").

Testimony of Justin Blok (Doc. 175) is **moot**.  The Clerk shall enter final judgment in favor of

Overstock on all claims.

     **IT IS SO ORDERED.**

     Dated: March 9, 2026

                              S/ Julie A. Robinson
                              JULIE A. ROBINSON
                              UNITED STATES DISTRICT JUDGE